GHODS LAW FIRM
Mohammed K. Ghods (SBN 144616)
William A. Stahr (SBN 167870)
Jeremy A. Rhyne SBN 217378)
2100 N. Broadway, Ste. 300
Santa Ana, CA 92706
Telephone: (714) 245-2480
Facsimile: (714) 245-2483

Attorney for Plaintiff
*VIVINE H. WANG*

FILED
CLERK, U.S. DISTRICT COURT
MAR 29 2011
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

VIVINE H. WANG, an individual,

Plaintiff,

v.

THE BEAR STEARNS COMPANIES LLC, a Delaware limited liability company formerly known as The Bear Stearns Companies Inc.; J.P. MORGAN SECURITIES LLC, a Delaware limited liability company formerly known as Bear, Stearns & Co., Inc.; J.P. MORGAN CLEARING CORP, a Delaware corporation formerly known as Bear, Stearns Securities Corp.; DELOITTE & TOUCHE LLP, a limited liability partnership; ALAN D. SCHWARTZ, an individual; ALAN C. GREENBERG, an individual; JOEY ZHOU, an individual; and GARRETT BLAND, an individual,

Defendants.

Case No. CV11 02624 PA SSx

**COMPLAINT FOR:**

1. **VIOLATION OF FEDERAL SECURITIES LAWS (Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5)**
2. **VIOLATION OF FEDERAL SECURITIES LAWS (Section 20(a) of the Securities Exchange Act of 1934)**
3. **BREACH OF FIDUCIARY DUTY**
4. **FRAUD AND DECEIT**
5. **VIOLATION OF CAL. CORP. CODE SECTIONS 25400 AND 25401**
6. **VIOLATION OF CAL. B & P CODE SECTION 17200**
7. **CONVERSION**
8. **UNJUST ENRICHMENT/RESTITUTION AND PUNITIVE DAMAGES**

**DEMAND FOR JURY TRIAL**

**PRELIMINARY GENERAL ALLEGATIONS – NATURE OF THIS ACTION**

1. Plaintiff VIVINE H. WANG is an individual residing in the County of Los Angeles, State of California. Plaintiff has been a putative class member of the putative class of investors defined in United States District Court case number 08 MDL 1963, which case remains pending in the United States District Court for the Southern District of New York. A true and correct copy of the Consolidated Class Action Complaint for Violation of the Federal Securities Laws (without exhibits) filed in case number 08 MDL1963 is attached hereto as Exhibit "A" and incorporated herein by reference. Plaintiff qualifies as a member of the proposed class of investors defined in case no. 08 MDL 1963 who were damaged by Defendants' fraud and securities law violations. By filing this action, Plaintiff intends to and hereby does elect to opt out of the class action to pursue her claims individually.

2. As alleged in detail below, from March 3, 2008 through March 14, 2008, several purchases of Bear Stearns stock were processed through Plaintiff's Bear Stearns account and resulted in the loss of many millions of dollars following Bear Stearns' colossal and now infamous financial collapse, which came to light on Sunday, March 16, 2008.

3. After a week of heightened media coverage during which Bear Stearns' top executives publicly and repeatedly denied that Bear Stearns had any liquidity or other financial problems, on March 16, 2008 JPMorgan Chase announced that it was taking over Bear Stearns for the fire sale price of $2.00 per share. The price of Bear Stearns stock sold to the investing public, including Plaintiff herein, a mere two days prior, on Friday, March 14, 2008, was well over $30.00 per share.

4. Not surprisingly, several class action lawsuits were immediately filed against Bear Stearns and its officers and directors, seeking relief for the massive damage caused by Bear Stearns' fraud and securities law violations. Soon afterwards, several of these cases were referred to the United States Judicial Panel on Multidistrict Litigation. By order dated August 18, 2008, the MDL Panel assigned these class

actions to the United Stated District Court for the Southern District of New York, the Honorable Judge Robert W. Sweet presiding. By order of the MDL Panel, several additional class actions were also transferred to the SDNY.

5. By Order dated January 6, 2009, the Honorable Judge Sweet consolidated the transferred class actions, appointed lead counsel, and scheduled the filing of three consolidated complaints, one of which was for federal securities law violations. On February 27, 2009, the Consolidated Class Action Complaint for Violations of the Federal Securities Laws was filed in case no. 08 MDL 1963. The various defendants responded by filing motions to dismiss the three separate consolidated complaints.

6. On January 19, 2011, the District Court issued its 398-page decision on the motions to dismiss. Relevant to this action and Plaintiff's claims, the District Court denied defendants Bear Stearns' and Deloitte Touche LLP's separate motions to dismiss the Consolidated Class Action Complaint for Violations of the Federal Securities Laws. The District Court ruled that the complaint allegations were sufficient to support all claims asserted therein against the moving parties, including specifically claims for violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder. A true and correct copy of the relevant portions of the Honorable Judge Sweet's decision on the motions to dismiss, pages 1 through 231, is attached hereto as Exhibit "B" and incorporated herein by reference.

7. In light of the District Court's decision in case no. 08 MDL 1963, Plaintiff now elects to opt out of that class action and pursue her own claims for federal securities law violations individually.

8. Certain claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 77j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

9. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1337(a).

10. Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) and (c). Many of the acts and omissions alleged herein occurred in substantial part in this District and/or were targeted at investors residing in this District, and many of the defendants worked or maintained offices in this District at all relevant times.

## THE PARTIES

11. Defendant THE BEAR STEARNS COMPANIES LLC, formerly known as The Bear Stearns Companies Inc., (hereinafter "Bear Stearns Companies") is a Delaware limited liability company that at all relevant times was doing business in the State of California. At all relevant times Bear Stearns Companies was a broker-dealer within the meaning of and subject to California and federal securities laws. In or around May 2008, a wholly-owned subsidiary of JPMorgan Chase & Co. merged with and into Bear Stearns Companies Inc., with The Bear Stearns Companies Inc. continuing as the surviving corporation and a wholly-owned subsidiary of JPMorgan Chase & Co. Sometime thereafter, The Bear Stearns Companies Inc. converted from a Delaware corporation to a Delaware limited liability company and changed its name to The Bear Stearns Companies LLC.

12. Defendant J.P. MORGAN SECURITIES LLC, formerly known as Bear, Stearns & Co., Inc., (hereinafter "Bear Stearns & Co.") is a Delaware limited liability company that at all relevant times was doing business as a securities brokerage firm in the State of California, with local offices located at 1999 Avenue of the Stars, 33rd Floor, Los Angles, California 90067. At all relevant times Bear Stearns & Co. was a broker-dealer, stockbroker, and investment advisor within the meaning of and subject to California and federal securities laws. Sometime in 2008 (soon after or in conjunction with JP Morgan Chase's purchase of Bear Stearns), Bear, Stearns & Co., Inc. changed its name to J.P. Morgan Securities Inc. In 2010, J.P. Morgan Securities, Inc. converted from a Delaware corporation to a Delaware limited liability company and changed its name to J.P. Morgan Securities LLC.

13. Defendant J.P. MORGAN CLEARING CORP., formerly known as Bear, Stearns Securities Corp., (hereinafter "Bear Stearns Securities") is a Delaware corporation that at all relevant times was doing business in the State of California. At all relevant times Bear Stearns Securities was a broker-dealer within the meaning of and subject to California and federal securities laws. Sometime in 2008 (soon after or in conjunction with JP Morgan Chase's purchase of Bear Stearns), Bear, Stearns Securities Corp. changed its name to J.P. Morgan Clearing Corp.

14. At all relevant times, Defendants Bear Stearns & Co. and Bear Stearns Securities were wholly owned subsidiaries of and controlled by Defendant Bear Stearns Companies, a holding company whose registered shares were publicly-traded on the NYSE under the symbol "BSC" until in or around May 2008. Plaintiff sometimes collectively refers herein to these three defendants as "Bear Stearns."

15. Plaintiff is informed and believes, based on public records and Bear Stearns court filings, and thereon alleges that Bear Stearns Securities is now a subsidiary of J.P. Morgan Securities LLC; that Bear Stearns & Co. is a wholly-owned subsidiary of J.P. Morgan Broker-Dealer Holdings Inc., which is a wholly-owned subsidiary of JPMorgan Chase & Co.; and that Bear Stearns Companies is also a subsidiary of JPMorgan Chase & Co.

16. Defendant ALAN D. SCHWARTZ is an individual who was Co-President and Co-Chief Operating Officer of Bear Stearns from June 2001 to August 2007. He became sole President on August 5, 2007, and remained in that position until January 5, 2008, when he was named CEO of Bear Stearns. Defendant Schwartz also served on Bear Stearns' Board of Directors at all relevant times. Defendant Schwartz made false and misleading public statements related to Bear Stearns' financial health as herein alleged.

17. Defendant ALAN C. GREENBERG was Chairman of the Executive Committee of Bear Stearns at all relevant times. Defendant Greenberg made false and misleading public statements related to Bear Stearns' financial health as herein alleged.

18. Defendant JOEY ZHOU is an individual residing in the State of California, County of Los Angeles, who at all relevant times was an authorized agent, representative, stock broker, and/or employee of Defendant Bear Stearns & Co. At all relevant times Defendant Zhou worked out of Bear Stearns' Century City office and was a broker-dealer, the agent of a broker-dealer, and/or an investment advisor within the meaning of and subject to California and federal securities laws.

19. Defendant GARRETT BLAND is an individual residing in the State of California, who at all relevant times was an authorized executive, officer, top manager, managing director, managing agent, representative, and/or management employee of Bear Stearns. At all relevant times Defendant Bland worked out of Bear Stearns' Century City office as a Senior Managing Director and was a broker-dealer, the agent of a broker-dealer, an officer of a broker-dealer, and/or an investment advisor within the meaning of and subject to California and federal securities laws.

20. Defendant DELOITTE & TOUCHE LLP ("Deloitte") at all relevant times was the independent outside auditor for Bear Stearns, with local offices located at 350 S. Grand Avenue, Suite 200, Los Angeles, CA 90071. At all relevant times Deloitte provided audit, audit-related, tax and other services to Bear Stearns, including the issuance of unqualified opinions on Bear Stearns' financial statements and management's assessment of internal controls for fiscal years 2006 and 2007.

21. At all relevant times Plaintiff was an investor and customer of Defendants Bear Stearns, Zhou, and Bland, who each were stockbrokers, had a pre-existing relationship with Plaintiff and her husband H. Roger Wang, knew Plaintiff and her husband to be Bear Stearns' clients, and advised Plaintiff and her husband about investment decisions, including specifically one or more of the purchases at issue in this case. As such, Defendants Bear Stearns, Zhou and Bland each owed Plaintiff fiduciary duties as her stockbroker and as a broker-dealer, agent, and/or investment advisor within the meaning of California and federal securities laws.

///

## FACTUAL BACKGROUND

22. Plaintiff and other members of her family had a broker-client relationship with stockbroker Bear Stearns for many years, beginning in 1993 when Plaintiff and her family, including her husband H. Roger Wang, became customers of Bear Stearns.

23. Sometime in the mid-90's, Defendant Zhou joined Bear Stearns as a broker, agent, representative, and/or employee and began advising Plaintiff and her family about investments. Zhou frequently made recommendations and gave specific advice to the Wang family (and specifically Plaintiff's husband) concerning, among other things, investment strategies (i.e., purchase and sale of stocks). Plaintiff and her husband frequently relied on Defendant Zhou's financial advice.

24. In early 2008, Plaintiff and her husband, who had been using a different broker, informed Defendant Zhou that they would place some stock orders with Bear Stearns again. Defendant Zhou represented that a new account needed to be set up. On February 29, 2008, Defendant Zhou filled out the relevant paperwork to set up the new account, drove to the Wang's home, and Plaintiff signed the paperwork presented to her to establish the new account. Plaintiff's husband was not asked to sign any paperwork. As further alleged below, Plaintiff's husband verbally placed orders for Bear Stearns stock purchases that are at issue in this case. At no time did anyone from Bear Stearns ask Plaintiff's husband to sign any paperwork. Also, neither Plaintiff nor her husband were ever told that either of them would be required to arbitrate any claims they might have against Bear Stearns or its agents with FINRA or any other dispute resolution forum.

25. On Monday, March 3, 2008, Defendant Zhou talked with Plaintiff's husband regarding investments, at which time Plaintiff's husband placed a verbal order for 10,000 shares of EWBC, which order Bear Stearns accepted, processed through the new account, and filled at $18.8222 per share, with a settlement date of March 6, 2008.

26. On March 4, 2008, Defendant Zhou talked with Plaintiff's husband regarding further investment, at which time Plaintiff's husband placed another verbal

order with Bear Stearns, this time for 20,000 shares of EWBC, which order Bear Stearns accepted, processed through the new account, and filled at $18.1025 per share, with a settlement date of March 7, 2008.

27. On March 6, 2008, Defendant Zhou talked with Plaintiff's husband regarding further investment, at which time Plaintiff's husband placed another verbal order with Bear Stearns, this time for 20,000 shares of EWBC, which order Bear Stearns accepted, processed through the new account, and filled at $17.64 per share, and also for 10,000 shares of BSC, which order Bear Stearns accepted, processed through the new account, and filled at $71.9567 per share, each with a settlement date of March 11, 2008.

28. On March 10, 2008, Defendant Zhou talked with Plaintiff's husband regarding further investment, at which time Plaintiff's husband placed another verbal order with Bear Stearns, this time for another 20,000 shares of BSC, which order Bear Stearns accepted, processed through the new account, and filled at $64.0329 per share, with a settlement date of March 13, 2008. That same day (March 10, 2008), the President and CEO of Bear Stearns, Defendant Schwartz, issued a press release denying market liquidity rumors and expressly stating that "Bear Stearns' balance sheet, liquidity, and capital remain strong."

29. On March 11, 2008, Defendant Zhou talked with Plaintiff's husband regarding further investment, at which time Plaintiff's husband placed another verbal order with Bear Stearns, this time for another 20,000 shares of BSC, which order Bear Stearns accepted, processed through the new account, and filled at $59.5227 per share, with a settlement date of March 14, 2008.

30. Also on March 11, 2008, Plaintiff's husband attended a meeting hosted by Bear Stearns at its Century City office, where Bear Stearns' representatives made statements and representations about the financial condition of the company. Plaintiff's husband sat at a table with Bear Stearns' Senior Managing Director Defendant Bland, who knew Plaintiff and her husband were customers of Bear Stearns. Defendant Bland

told Plaintiff's husband, among other things, that Bear Stearns was financially sound, that its stock value should be at least $85.00 per share, and that now was a great time to invest in the stock. Defendant Bland even expressly advised Plaintiff's husband to buy as much BSC stock as he could and stated that he (Bland) would buy more if he could, but that he couldn't because of his executive position. That same day, Bear Stearns CFO appeared on CNBC and again denied any liquidity problems.

31. On Friday, March 14, 2008, Plaintiff's husband was scheduled to fly out of the country. Defendant Zhou talked with Plaintiff's husband regarding further investment, and in combination with reasonable reliance on Defendant Bland's favorable recommendations and the long established relationship with Bear Stearns, Plaintiff's husband placed another verbal order with Defendant Zhou for an additional 200,000 shares of BSC, which order Bear Stearns processed through the new account and only partially filled, in two 50,000 share blocks -- one at $33.4397 per share and one at $34.0016 per share -- with a settlement date of March 19, 2008. At no time that day or ever did Defendant Zhou warn, caution or advise Plaintiff or her husband against buying any more BSC stock. Aware that Plaintiff's husband was planning to wire funds to Bear Stearns' New York account to pay for the March 11th and March 14th stock orders, Defendant Zhou provided written wire transfer instructions to Plaintiff for use by her husband. All other trades had already been fully paid for in full.

32. As a result of the above-described trades, the Wang's became beneficial owners of 150,000 shares of BSC stock and 50,000 shares of EWBC. Bear Stearns processed all of these orders through Plaintiff's account and at all times treated Plaintiff as the stock purchaser.

33. Unbeknownst to Plaintiff or her husband, at 9:00 AM New York Time on March 14, 2008, Defendant Schwartz had issued a press release announcing, *inter alia*, that Bear Stearns had "reached an agreement with JPMorgan Chase & Co. (JPMC) to provide a secured loan facility backed by the Federal Reserve for an initial period of up to 28 days allowing Bear Stearns to access liquidity as needed." Defendant Schwartz

also stated that Bear Stearns was "talking with JPMorgan Chase & Co. [about] permanent financing or other alternatives." In effect, Bear Stearns' credit facilities had essentially dried up, liquidity was in fact a huge problem, and the company was rapidly heading towards complete financial collapse, despite Bear Stearns' several previous misleading pronouncements made all week long, via press releases and public appearances (including on television), that everything was fine and there was nothing of substance to unfavorable market rumors.

34. Both Plaintiff and her husband were unaware of the above-mentioned March 14th press release at the time their last order was placed.

35. On Sunday, March 16, 2008, JP Morgan Chase & Co. announced that it was acquiring Bear Stearns (BSC) for approximately $2.00 per share. As a result of the announcement, the market price of BSC stock suddenly plummeted and with it the value of Plaintiff's sizable investment in BSC stock. Once the Wang's learned of the fraud, and after having just paid millions of dollars for now significantly devalued BSC stock (worth $300,000 at JPMorgan's announced acquisition price of $2.00 per share), Wangs stopped payment on the scheduled wire transfer for their final stock trades.

36. On or about March 17, 2008, Mr. John Loftus of Bear Stearns called Plaintiff's husband in China, demanding payment for the above-mentioned trades. Plaintiff's husband told Mr. Lotfus to communicate with the Wangs' lawyer. On that same day, the first of several securities class action lawsuits against Bear Stearns was filed in the United States District Court for the Southern District of New York.

37. At approximately 8:32 AM Pacific Time on March 18, 2008, Mr. Loftus sent Plaintiff a threatening email demanding payment that same day by 10:00 AM Pacific Time or else Bear Stearns would "sell out" the entire holdings of the new account. Plaintiff's attorney, who was cc'd on this email, promptly responded and demanded, among other things, to be provided with copies of all relevant documents and that Bear Stearns cease and desist from any activity regarding the new account. Plaintiff also promptly replied by email, advised Mr. Loftus that the subject trades involved fraud,

demanded that the new account not be touched, and requested all documents for the account be promptly provided to the Wangs' attorney.

38. Instead of honoring Plaintiff's and Mr. Wang's objections and demands, on March 18, 2008 Bear Stearns improperly and without Plaintiff's consent, sold all stock that had been credited to the new account with Bear Stearns, as follows: 150,000 shares of BSC stock sold at $6.3156 per share for a total (including reduction for fees and charges) of $947,324.57 and 50,000 shares of EWBC (East West Bancorp Inc.) stock sold at $18.0444 per share for a total (including reduction for fees and charges) of $902,205.07. This unauthorized liquidation of stock holdings created huge losses for Plaintiff and the Wang family.

39. Defendant Bear Stearns & Co. then ignored the class actions and the Wangs' assertion of fraud as a defense to further payment and rushed to commence an arbitration against Plaintiff before an entity called FINRA Dispute Resolution, Inc. ("FINRA DR"), seeking the balance of what it contended was still owing on the fraudulent stock transactions. This was contrary to the terms of the Bear Stearns Customer Agreement that Plaintiff had been asked to sign. While the Customer Agreement included a pre-dispute arbitration agreement, it also included a forbearance provision that expressly prohibited the parties from bringing class action claims to arbitration or enforcing the pre-dispute arbitration agreement against putative class members who had not opted out of a pending class action. The rules of the arbitration forum selected by Defendant Bear Stearns & Co. also prohibited the assertion of any class action claims in the arbitration, whether affirmatively or in defense to claims. All of Bear Stearns & Co.'s arbitration claims related to BSC securities transactions that qualified Plaintiff and her husband as putative class members in the dozens of class action lawsuits that are presently consolidated before the United States District Court for the Southern District of New York.

40. Not wanting to waive her rights as a putative class member, at all times Plaintiff objected to the jurisdiction of the arbitrators, the forum, and the arbitration itself,

while consistently refusing to defend the arbitration claims on the merits to avoid a waiver. Despite knowing about the pending class actions and Plaintiff's repeated objections to jurisdiction and refusal to voluntarily participate in the arbitration on the merits because of same, in June 2009 the FINRA DR arbitrators nonetheless conducted a default-type arbitration at Bear Stearns & Co.'s insistence and rendered a multi-million dollar arbitration award against Plaintiff.

41. Plaintiff immediately filed a California state court petition (and subsequent motion) to vacate the arbitration award, asserting that the arbitration was prohibited. Bear Stearns & Co. removed the petition to federal court and filed a counter-petition to confirm the award. That related proceeding was assigned case no. 2:09-cv-05731-GHK-CT. Each side then filed their respective motions to vacate or confirm the award. After extensive briefing of the issues, Judge King ruled that Bear Stearns & Co.'s claims were arbitrable before the FINRA DR panel and that the arbitration was not prohibited by the terms of the Customer Agreement. Judge King entered a judgment in accordance therewith and thereafter granted in part Bear Stearns & Co.'s post-judgment motion for attorneys' fees and costs.

42. Plaintiff believes that the District Court's interpretation of the relevant arbitration agreement provisions, and its resultant decisions on the two related motions were erroneous. Plaintiff has appealed the judgment confirming the arbitration award, as well as the order awarding Bear Stearns & Co. its post arbitration costs and attorneys' fees. Those two related appeals are fully briefed and pending before the Ninth Circuit, which has yet to schedule oral argument.

## SUMMARY OF ALLEGATIONS INCORPORATED BY REFERENCE FROM CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

43. The Honorable Judge Sweet, in his January 19, 2001 decision, summarized the general categories of allegations contained in the Consolidated Class Action Complaint on file in case no. 08 MDL 1963 and the paragraphs containing same.

(*See* Exhibit B, pp. 06-07) As Judge Sweet noted, the factual background and substantive allegations are set forth in paragraphs 33-452; Defendants' scienter in paragraphs 453-506; Deloitte's deficient audits of Bear Stearns' financial statements in paragraphs 523-588; Defendants' materially false and misleading statements in paragraphs 589-794; loss causation in paragraphs 795-802; presumption of reliance in paragraphs 809-811; and inapplicability of statutory safe harbor in paragraph 812. The District Court specifically found these detailed factual allegations sufficient to support a claim for violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, as well as Section 20(a) of the Exchange Act. Plaintiff incorporates these complaint allegations herein by reference the same as if set forth in full. (*See* Exhibit A attached hereto)

44. These incorporated allegations show that, at all relevant times, Defendants misled Plaintiff and her husband and concealed highly relevant information about Bear Stearns, including specifically its extremely poor and disastrous financial condition and its plans that resulted in its agreement to sell the company to JPMorgan at a low fire-sale price. At all relevant times Defendants knowingly and recklessly concealed material facts about Bear Stearns from Plaintiff and the rest of the investing public. For example, Bear Stearns (1) concealed that it was grossly over-exposed to the potential for substantial losses as conditions in the sub-prime market deteriorated; (2) actively concealed the ominous dangers it faced; (3) failed to take accurate and timely write-downs for losses resulting from the collapse of the sub-prime market; and (4) made statements about its financial well-being and future business prospects that were lacking in any reasonable basis when made. Instead of fully and truthfully disclosing pertinent information regarding these companies and the value of BSC stock to Plaintiff and the market, Defendants took affirmative steps to conceal the truth while making affirmative misrepresentations about Bear Stearns' financial circumstances and value in a desperate attempt to prop up its stock value.

///

45. Additionally, the above-mentioned statements and recommendations made directly to Plaintiff and/or her husband were made for the purpose of inducing investors such as the Wang's to purchase BCS stock. At all relevant times Defendants Zhou and Bland were acting as financial advisors to Plaintiff and her husband and each was an employee or authorized agent for Bear Stearns. At all relevant times Defendants Zhou, Bland, Schwartz, Greenberg, and others engaged in the deceitful course of conduct alleged herein with the consent, authorization and ratification of Bear Stearns. Defendants engaged in an unlawful conspiracy to support BSC's falling stock price through the use of deceitful means, such as issuing false and misleading press releases and making numerous other misleading statements to and concealments from investors in the State of California and elsewhere concerning the financial health of Bear Stearns and the value of BSC stock. Among other things, Defendants made false and fraudulent representations to Plaintiff and other investors while concealing the true financial condition and desperate plans of Bear Stearns. Several Bear Stearns executives, including specifically Defendants Schwartz and Greenberg, knew that Bear Stearns was in precarious financial shape, but concealed this information from Plaintiff and the public at all relevant times.

46. Furthermore, as alleged above, on March 11, 2008 Defendant Bland affirmatively represented that BSC stock was a great investment, the company was financially strong, and BSC stock had a value much higher than the market was recognizing at that moment. Such representations of fact were in fact false when made, which Defendant Bland knew or reasonably should have known, and Plaintiff was at all relevant times ignorant of their falsity. Additionally, the March 10, 2008 press release issued by Bear Stearns' President and CEO, Defendant Schwartz, was knowingly and intentionally false, incomplete and/or misleading.

47. As a result of the conduct of Defendants, and each of them, Plaintiff has suffered, and will continue to suffer, damages in an amount not yet ascertained but in excess of $10,000,000.00, according to proof at the time of trial. Alternatively, Plaintiff

seeks rescission of the stock transactions. Plaintiff will elect her remedies at the appropriate time before judgment is entered in this case.

48. The fraud committed by Defendants as herein alleged, was done with a conscious disregard of Plaintiff's rights and with the intent to injure, so as to constitute oppression, fraud or malice under California Civil Code § 3294, entitling Plaintiff to an award of punitive damages in an amount appropriate to punish or make an example of Defendants.

## CLAIMS FOR RELIEF

## COUNT 1

## For Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder

## (Against All Defendants)

49. Plaintiff repeats and incorporates herein by this reference each and every allegation in the foregoing paragraphs, including the allegations of the Consolidated Class Action Complaint (Exhibit A) incorporated into this Complaint by reference, the same as if fully set forth herein.

50. At all relevant times, Defendants: a) knowingly and/or recklessly deceived the investing public, including Plaintiff, as alleged herein; b) artificially inflated the market price of BSC common stock; and c) caused Plaintiff to purchase or otherwise acquire BSC common stock at artificially-inflated prices.

51. Each of the Defendants, in violation of Section 10(b) of the Exchange Act and Rule 10b-5(b), made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made by the Defendants not misleading, and/or substantially participated in the creation of the alleged misrepresentation, which operated as a fraud and deceit upon Plaintiff, in an effort to maintain the artificially-inflated price of BSC common stock during all relevant times. Defendants' false statements (and omissions of material facts) are set forth in paragraphs 589 to 794 of Exhibit A attached hereto and incorporated by reference.

52. As a result of their making and/or substantially participating in the creation of affirmative statements to the investing public, Defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with applicable laws and regulations.

53. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, made or substantially participated in the creation/dissemination of untrue statements of material fact as set forth herein, or with extreme recklessness failed to ascertain and disclose truthful facts even though such facts were available to them.

54. The facts alleged herein give rise to a strong inference that each of the Defendants acted with scienter. Each of the Defendants knew or with extreme recklessness disregarded that the statements set forth above were materially false and misleading for the reasons set forth herein.

55. Defendants carried out a deliberate scheme to misrepresent the effectiveness of Bear Stearns' controls, the value of Bear Stearns' assets, and the risks to which the Bear Stearns' investors were being exposed.

56. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of BSC common stock was artificially inflated at all relevant times. Unaware that the market price of BSC common stock was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the markets in which BSC common stock traded, and the truth of any representations made to appropriate agencies and to the investing public, at the times at which any statements were made, and/or in the absence of material adverse information that was known, or with deliberate recklessness disregarded, by Defendants but not disclosed in their public statements, Plaintiff purchased or otherwise acquired BSC common stock at artificially-inflated prices.

///

57. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered damages in connection with purchase of BSC common stock, when the inflation in the price of BSC common stock was gradually removed as the truth regarding Defendants' conduct was revealed causing the price of BSC common stock to decline and thereby resulting in economic losses to Plaintiff, which losses were compounded even further by Bear Stearns' unauthorized liquidation of Plaintiff's stock holdings at depressed prices below the price ultimately paid by JPMorgan Chase.

58. By reason of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5(b) promulgated thereunder, and are liable to Plaintiff for all damages suffered in connection with the above-mentioned transactions in BSC common stock. Alternatively, Plaintiff is entitled to rescission of the subject transactions. Plaintiff will elect her remedies at the appropriate time.

**COUNT 2**

**For Violation of Section 20(a) of the Exchange Act**

**(Against Defendants SCHWARTZ and GREENBERG)**

59. Plaintiff repeats and incorporates herein by this reference each and every allegation in the foregoing paragraphs, including the allegations of the Consolidated Class Action Complaint (Exhibit A) incorporated into this Complaint by reference, the same as if fully set forth herein.

60. Bear Stearns is a primary violator of Section 10(b) and Rule 10b-5 promulgated thereunder.

61. At all relevant times, Defendants SCHWARTZ and GREENBERG acted as controlling persons of Bear Stearns within the meaning of Section 20(a) of the Exchange Act, as alleged herein, by reason of their positions as officers and/or directors of Bear Stearns, their ability to approve the issuance of statements, their ownership of Bear Stearns securities and/or by contract. As such, Defendants SCHWARTZ and GREENBERG had the power and authority to direct and control, and did direct and control, directly or indirectly, the decision-making of Bear Stearns as set forth herein.

Defendants SCHWARTZ and GREENBERG were provided with or had unrestricted access to copies of the Bear Stearns' reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. Defendants SCHWARTZ and GREENBERG had direct and supervisory involvement in the day-to-day operations of Bear Stearns and, therefore, are presumed to have had the power to control or influence, and during all relevant times did exercise their power to control and influence, the conduct giving rise to the violations of the federal securities laws alleged herein. Defendants SCHWARTZ and GREENBERG prepared, or were responsible for preparing, the Bear Stearns' press releases and SEC filings and/or made statements to the market in SEC filings, annual reports, press releases, news articles and conference calls. Defendants SCHWARTZ and GREENBERG controlled Bear Stearns and each of its employees.

62. By virtue of their positions as controlling persons of Bear Stearns, and by reason of the conduct described herein, Defendants SCHWARTZ and GREENBERG are liable pursuant to Section 20(a) of the Exchange Act for controlling a primary violator of the federal securities laws.

63. As a direct and proximate result of Defendant SCHWARTZ's and GREENBERG's wrongful conduct, Plaintiff suffered damages in connection with the purchases of BSC common stock alleged herein.

**COUNT 3**

**For Breach of Fiduciary Duty and Conspiracy to Induce Breach of Fiduciary Duty**

**(Against Defendants BLAND, ZHOU, BEAR STEARNS COMPANIES, BEAR STEARNS & CO., and BEAR STEARNS SECURITIES)**

64. Plaintiff repeats and incorporates herein by this reference each and every allegation in the foregoing paragraphs, including the allegations of the Consolidated

///

Class Action Complaint (Exhibit A) incorporated into this Complaint by reference, the same as if fully set forth herein.

65.     By reason of the broker-customer relationship between Plaintiff and Bear Stearns alleged herein, Defendants Bland, Zhou, Bear Stearns Companies, Bear Stearns & Co., and Bear Stearns Securities (collectively "Fiduciary Defendants"), and each of them, owed Plaintiff fiduciary duties.  In light of this confidential and/or fiduciary relationship that existed between Plaintiff and her personal stockbrokers and financial advisors, the Fiduciary Defendants owed Plaintiff the fiduciary duties of honesty and utmost good faith by virtue of their status as Plaintiff's financial advisors, stockbrokers, managing agents of broker-dealer Bear Stearns, and/or persons promoting and controlling the investment activities described herein.  By virtue of their relationship, trust and confidence was also reposed by Plaintiff in the integrity and fidelity of these Fiduciary Defendants, which trust and confidence the Fiduciary Defendants voluntarily accepted and/or assumed, such that said Fiduciary Defendants owed Plaintiff a duty to disclose all material facts concerning the subject investments and to act within the law as Plaintiff's fiduciaries.   By virtue of such placed trust, the Fiduciary Defendants obtained and exercised control over the financial and investment affairs of Plaintiff and millions of dollars of her funds and/or stock holdings.

66.     At all relevant times Defendant Zhou was an agent and employee of one or more of the broker-dealer Defendants, namely Bear Stearns & Co., Bear Stearns Companies, and/or Bear Stearns Securities.  At all relevant times Defendant Bland was a managing agent and/or significant employee of one or more of the broker-dealer Defendants, namely Bear Stearns & Co., Bear Stearns Companies, and/or Bear Stearns Securities.  At all relevant times the above-named Bear Stearns Defendants breached their duties and responsibilities by, *inter alia*, issuing false and misleading press releases and other public pronouncements and failing to properly supervise and control the activities of Defendants Zhou and Bland, who at all times were acting on behalf of Bear Stearns.

67. As alleged in more detail above, the Fiduciary Defendants intentionally breached the fiduciary duties owed to Plaintiff by their acts and omissions, including but not limited to, failing to timely disclose all material relevant facts to Plaintiff regarding the securities being purchased, such as the fact that Bear Stearns was in dire financial straits and desperately seeking a financing bailout or merger partner; failing to provide Plaintiff with adequate, timely and accurate financial advice, information and assessments; misinforming Plaintiff and her husband about the true financial condition of Bear Stearns and the real value of BSC stock and its prospects; and mishandling the above-described orders and then, while the market price of BSC stock was plummeting, placing their own interests ahead of Plaintiff's by abruptly attempting to cover payment for the last few orders prior to the settlement date via the expedited, unauthorized and improper sale of the stock that had been purchased.

68. As a direct and proximate result of the Fiduciary Defendants' wrongful conduct and breaches of fiduciary duties, Plaintiff has suffered and will continue to suffer in the future damages in an amount not yet ascertained, but in excess of $10,000,000.00, according to proof at trial.

69. The conduct of the Fiduciary Defendants, as herein alleged, was done with a conscious disregard of Plaintiff's rights, as the Fiduciary Defendants knew by virtue of their fiduciary relationship with Plaintiff that their conduct would impose a great financial hardship on Plaintiff and was likely to expose Plaintiff to ruinous circumstances, and yet the Fiduciary Defendants acted with the intent to harass, vex, injure, and/or annoy Plaintiff so as to constitute oppression, fraud or malice under Civil Code Section 3294, entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of these Fiduciary Defendants and deter future misconduct.

///

///

///

///

**COUNT 4**

**Fraud and Deceit/Conspiracy to Defraud**

**(Against Defendants BLAND, ZHOU,**

**BEAR STEARNS COMPANIES, BEAR STEARNS & CO., and**

**BEAR STEARNS SECURITIES)**

70. Plaintiff repeats and incorporates herein by this reference each and every allegation in the foregoing paragraphs, including the allegations of the Consolidated Class Action Complaint (Exhibit A) incorporated into this Complaint by reference, the same as if fully set forth herein.

71. A fiduciary and confidential relationship existed between Plaintiff, on the one hand, and Defendants Zhou, Bland, Bear Stearns Companies, Bear Stearns & Co., and Bear Stearns Securities (the "Fiduciary Defendants"), on the other hand.

72. Defendants Zhou, Bland, Bear Stearns Companies, Bear Stearns & Co., and Bear Stearns Securities, and each of them, at all relevant times, either directly or through their conspiracy with the other Fiduciary Defendants, deliberately concealed and suppressed materials facts regarding Bear Stearns' financial condition, made intentional and/or negligent representations as to past or existing materials facts, and/or made false promises to Plaintiff and her husband in order to induce the above-described purchases of stock, with the intent to induce such purchases and investment of funds with Bear Stearns (and, specifically in BSC stock), with full knowledge that the risk of such investment in BSC stock was not justified in light of the information available to the Fiduciary Defendants. At all relevant times, the Fiduciary Defendants were under a duty to timely and fully disclose all material facts to Plaintiff, including but not limited to, the true financial condition of Bear Stearns and the value of BSC stock.

73. The fraud of the Fiduciary Defendants, as more fully alleged above, also constitutes constructive fraud *per se* under California law.

74. Further, with respect to Defendant Bear Stearns Companies, it had an additional obligation to ensure that full and accurate information was timely disclosed to

all investors and prospective purchasers of its stock at all relevant times. In particular, Defendant Bear Stearns Companies had a duty to refrain from manipulating its stock and issuing false and misleading press releases and making other public pronouncements that were not true, and instead had a duty to issue timely, true and complete statements concerning its status, as warranted under the circumstances and required by securities laws.

75. As hereinabove alleged, the Fiduciary Defendants' representations were false at the time made; the Fiduciary Defendants knew the representations were false when made, made the representations recklessly without knowing whether they were true or false, and/or made the representations without any reasonable grounds for believing them to be true; the Fiduciary Defendants made the representations with an intent to defraud Plaintiff and for the purpose of inducing Plaintiff to rely upon them and to act or refrain from acting in reliance thereon; Plaintiff was unaware of the falsity of the representations and acted or refrained from acting in reasonable and justified reliance upon the truth of the representations; and, as a result, Plaintiff sustained damages.

76. As hereinabove alleged, the Fiduciary Defendants also concealed or suppressed materials facts that they were under a duty to disclose to Plaintiff; they intentionally concealed or suppressed the material facts with the intent to defraud Plaintiff; Plaintiff was unaware of the materials facts and would not have acted as she did if she had known of the concealed or suppressed facts; and the concealment or suppression of the material facts caused Plaintiff to sustain damages.

77. The Fiduciary Defendants at all times relevant knew their representations were false, intentionally concealed true facts, and made representations with the intent to cause Plaintiff to rely on them and to deceive and induce Plaintiff to take the actions she did as alleged herein. As such, Plaintiff was induced to act or forbear to act in the manner alleged herein because she believed and reasonably relied on the representations made by the Fiduciary Defendants regarding, *inter alia*, the value of BSC stock and the financial condition of Bear Stearns.

78. By reason of the fraud and deceit of the Fiduciary Defendants as alleged herein, Plaintiff has suffered and will continue to suffer in the future damages in an amount not yet ascertained, but in excess of $10,000,000.00, according to proof at the time of trial.

79. The conduct of the Fiduciary Defendants, as herein alleged, is fraud by misrepresentation, concealment, and/or deceit by conspiracy, including conspiracy with Plaintiff's fiduciary agents, all of which was done with a conscious disregard of Plaintiff's rights, as the Fiduciary Defendants knew that their conduct would impose a great financial hardship on Plaintiff and was likely to expose Plaintiff to ruinous circumstances, and yet the Fiduciary Defendants acted with the intent to vex, injure, or annoy so as to constitute oppression, fraud or malice under Civil Code Section 3294, entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of these Fiduciary Defendants and deter future misconduct.

**COUNT 5**

**Violation of California Corporations Code Sections 25400 & 25401**

**(Against Defendants BLAND, ZHOU, SCHWARTZ, GREENBERG, BEAR STEARNS COMPANIES, BEAR STEARNS & CO., and BEAR STEARNS SECURITIES)**

80. Plaintiff repeats and incorporates herein by this reference each and every allegation in the foregoing paragraphs, including the allegations of the Consolidated Class Action Complaint (Exhibit A) incorporated into this Complaint by reference, the same as if fully set forth herein.

81. On the dates set forth above, Defendants, in Los Angeles County, offered and sold to Plaintiff the securities described above at the approximate total price of $7,480,851, and/or materially aided in the acts and transactions that violated California securities laws, which was done with intent to deceive and/or defraud Plaintiff.

82. As alleged in detail above, such transactions were made by means of various written and oral communications to Plaintiff, all of which either contained untrue statements or failed to state material facts necessary in order to make the statements

made in such communications not misleading in light of the circumstances under which they were made.

83. Plaintiff alleges that by committing such acts, Defendants violated California securities laws prohibiting fraud, including, *inter alia*, California Corporations Code §25400, which makes it unlawful for any broker-dealer or other person selling or offering for sale securities, to make, for the purpose of inducing the purchase or sale of the security by others, any statement which either (1) was, at the time and in the light of the circumstances under which it was made, false or misleading with respect to any material fact, or (2) omitted to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

84. Plaintiff is further alleges that by committing the above-described acts, Defendants also violated California Corporations Code §25401, which makes it unlawful for any person to offer or sell a security in California by means of any written or oral communication which contains an untrue statement of material fact, or omits to state any fact necessary to make the statement not misleading.

85. As a result of the above-described unlawful acts and statutory violations, by virtue of California Corporations Code §§ 25500, 25501, 25504, and/or 25504.1, Defendants are jointly and severally liable to Plaintiff, who is entitled to either rescind the purchases or recover damages, which election Plaintiff shall make at or before trial.

86. Defendants have also been unjustly enriched at Plaintiff's expense in that they have used Plaintiff's investments improperly for their own financial purposes, and have sold Plaintiff's stock and have charged fees for unauthorized transactions. Plaintiff is therefore entitled to recover from Defendants such unjust enrichment in an amount presently unknown, but which will be determined at the time of trial.

///

///

///

**COUNT 6**

**Violation of California Corporations Code Section 17200**

**(Against Defendants BLAND, ZHOU, BEAR STEARNS COMPANIES, BEAR STEARNS & CO., and BEAR STEARNS SECURITIES)**

87. Plaintiff repeats and incorporates herein by this reference each and every allegation in the foregoing paragraphs, including the allegations of the Consolidated Class Action Complaint (Exhibit A) incorporated into this Complaint by reference, the same as if fully set forth herein.

88. The representations and transactions alleged herein were made and entered into in the state of California, making the laws and public policies of the State of California govern the transactions and the conduct of the parties related thereto.

89. In addition to the wrongful acts mentioned above, Plaintiff further alleges that Defendants engaged in the additional unlawful, unfair and/or fraudulent business act or practice of providing Plaintiff with standardized paperwork that incorrectly purported to represent that stockbroker Bear Stearns and its agents were not providing the Wang's with any investment advice, when in reality Defendants were knowingly and frequently providing Plaintiff and her husband with specific advice on the various investments described above.

90. Plaintiff alleges that the wrongful acts committed by Defendants, as hereinabove alleged, are unlawful, unfair, and/or fraudulent business acts or practices within the meaning of California Business & Professions Code Section 17200, et seq., and thus acts of unfair competition under the laws of California. Plaintiff has relied on the above-described unlawful, unfair and/or fraudulent business acts or practices, including specifically the fraud and concealment alleged herein, and has thereby suffered injury in fact and monetary loss as a result of such acts.

91. Pursuant to Cal. B & P Section 17200 et seq., Plaintiff prays for all appropriate restitution and injunctive relief allowed by law, including an award of attorneys' fees.

**COUNT 7**

**Conversion**

**(Against Defendants BEAR STEARNS COMPANIES, BEAR STEARNS & CO., and BEAR STEARNS SECURITIES)**

92. Plaintiff repeats and incorporates herein by this reference each and every allegation in the foregoing paragraphs, including the allegations of the Consolidated Class Action Complaint (Exhibit A) incorporated into this Complaint by reference, the same as if fully set forth herein.

93. As alleged hereinabove, Plaintiff was the owner of personal property, namely 150,000 shares of BSC stock and 50,000 shares of EWBC stock.

94. Defendants actually interfered with Plaintiff's ownership of this property by selling the same without Plaintiff's authorization and retaining the sales proceeds.

95. Defendants' interference was knowing and/or intentional.

96. Plaintiff warned Defendants not to interfere with her stock and has demanded return of her property.

97. The interference has caused Plaintiff to suffer damages, according to proof at the time of trial.

98. Plaintiff further alleges that the intentional conduct committed by Defendants as herein alleged, was done with a conscious disregard of Plaintiff's rights and with the intent to injure, so as to constitute oppression, fraud or malice under California Civil Code § 3294, entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Defendants.

**COUNT 8**

**Unjust Enrichment/Restitution**

**(Against Defendants BEAR STEARNS COMPANIES, BEAR STEARNS & CO., and BEAR STEARNS SECURITIES)**

99. Plaintiff repeats and incorporates herein by this reference each and every allegation in the foregoing paragraphs, including the allegations of the Consolidated

Class Action Complaint (Exhibit A) incorporated into this Complaint by reference, the same as if fully set forth herein.

100. As alleged hereinabove, Plaintiff's funds and stock were wrongfully and fraudulently taken by Defendants, and improper and unauthorized fees and other charges were asserted and collected concerning same.

101. Defendants have unjustly received funds and stock that belong to Plaintiff.

102. The conduct of the Defendants in taking and receiving these funds and the subject stock has wrongfully and fraudulently caused Plaintiff to be deprived of the rightful enjoyment of the funds and/or the stock purchases therewith.

103. As a direct and proximate result of the wrongful acts herein alleged, Defendants have been unjustly enriched and Plaintiff prays for restitution from these Defendants of all such amounts, according to proof at time of trial, plus interest thereon at the legal rate. Plaintiffs will seek leave of court to state the exact amount of damages and unjust enrichment when the same is ascertained at or before the time of trial.

**PRAYER**

1. For compensatory, incidental, and consequential damages in an amount of not less than $10,000,000, according to proof at the time of trial;

2. For rescission of the subject stock transactions, if so elected by Plaintiff at or before the time of trial;

3. For restitution, return of converted property, disgorgement, injunctive, and other appropriate equitable relief;

4. For punitive and exemplary damages;

5. For reasonable attorney's fees, interest and costs;

6. For costs of suit incurred herein; and

7. For such other and further relief as the Court deems just and proper.

///

///

Dated: March 25, 2011

GHODS LAW FIRM

By: MOHAMMED K. GHODS
WILLIAM A. STAHR
JEREMY A. RHYNE
*Attorneys for Plaintiff*
*VIVINE H. WANG*

**DEMAND FOR JURY TRIAL**

A jury trial is hereby requested on each and every claim asserted herein, where a jury trial on such claims is permitted by contract or law.

Dated: March 25, 2011

GHODS LAW FIRM

By: MOHAMMED K. GHODS
WILLIAM A. STAHR
JEREMY A. RHYNE
*Attorney for Plaintiff*
VIVINE H. WANG

Name & Address:
Mohammed K. Ghods (SBN 144616)
William A. Stahr (SBN 167870)
GHODS LAW FIRM, 2100 N. Broadway, Suite 300
Santa Ana, California 92706
Telephone: (714) 558-8580

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIVINE H. WANG, an individual<br><br>PLAINTIFF(S)<br>v.<br><br>THE BEAR STEARNS COMPANIES LLC, et al., [SEE ATTACHMENT]<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV11 02624 PA<br><br>**SUMMONS** |

SSx

TO: DEFENDANT(S): [SEE ATTACHMENT]

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ ____________ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, MOHAMMED K. GHODS, whose address is 2100 N. Broadway, Suite 300, Santa Ana, California 92706. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: MAR 29 2011

By: CHRISTOPHER POWERS
Deputy Clerk

*(Seal of the Court)*

1181

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
| --- | --- |
| Vivine H. Wang v. The Bear Stearns Companies LLC, et al. | |

**INSTRUCTIONS FOR USE**

- This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
- If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff ☑ Defendant ☐ Cross-Complainant ☐ Cross-Defendant

THE BEAR STEARNS COMPANIES LLC, a Delaware limited liability company formerly known as The Bear Stearns Companies Inc.; J.P.MORGAN SECURITIES LLC, a Delaware limited liability company formerly known as Bear, Stearns & Co., Inc.; J.P.MORGAN CLEARING CORP, a Delaware corporation formerly known as Bear, Stearns Securities Corp.; DELOITTE & TOUCHE LLP, a limited liability partnership; ALAN D. SCHWARTZ, an individual; ALAN C. GREENBERG, an individual; JOEY ZHOU, an individual; and GARRETT BLAND, an individual

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) WANG, VIVINE H. | DEFENDANTS SEE ATTACHMENT |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) SEE ATTACHMENT | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No

☑ **MONEY DEMANDED IN COMPLAINT: $** 10,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

15 U.S.C. 77j(b) and 78t(a) violation of federal securities law, fraud

**VII. NATURE OF SUIT (Place an X in one box only.)**

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☑ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS — PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpractice
☐ 365 Personal Injury-Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus-Alien Detainee
☐ 465 Other Immigration Actions

**TORTS — PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities - Employment
☐ 446 American with Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/ Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE / PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety /Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

**FOR OFFICE USE ONLY:** Case Number: CV11 02624

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑ Yes
If yes, list case number(s): 09-cv-5731 GHK (CTx), George H. King; 08-cv-5523 PSG (CTx), Philip S. Gutierrez

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☑ A. Arise from the same or closely related transactions, happenings, or events; or
☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

*** Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): [signature] Date 3/25/2011

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

SHORT TITLE: Vivine H. Wang v. Bear Stearns, et al.

CASE NUMBER:

ATTACHMENT TO CIVIL COVER SHEET:

Attorneys for Plaintiff:

Mohammed K. Ghods (SBN 144616)
mghods@ghodslaw.com
William A. Stahr (SBN 167870)
wstahr@ghodslaw.com
Jeremy A. Rhyne (SBN 217378)
jrhyne@ghodslaw.com
GHODS LAW FIRM
2100 N. Broadway, Suite 300
Santa Ana, CA 92706
Telephone: (714) 558-8580
Facsimile: (714) 558-8579

List of Defendants:

THE BEAR STEARNS COMPANIES LLC; J.P.MORGAN SECURITIES LLC; J.P.MORGAN CLEARING CORP.; SCHWARTZ, ALAN D.; GREENBERG, ALAN C.; ZHOU, JOEY; BLAND, GARRETT.

*(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:

This page may be used with any Judicial Council form or any other paper filed with the court.

Page 1

Form Approved by the Judicial Council of California MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**

CRC 201, 501