UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE BEAR STEARNS COMPANIES, INC. SECURITIES, DERIVATIVE, AND ERISA LITIGATION<br><br>This Document Relates To:<br><br>      Securities Action, 08 Civ. 2793 (RWS) | Master File No.:<br><br>08 M.D.L. No. 1963 (RWS)<br><br>ECF Case |
| VIVINE H. WANG, an individual,<br><br>            Plaintiff,<br><br>       v.<br><br>THE BEAR STEARNS COMPANIES LLC, a Delaware limited liability company formerly known as The Bear Stearns Companies Inc.; J.P. MORGAN SECURITIES LLC, a Delaware limited liability company formerly known as Bear Stearns & Co., Inc.; J.P. MORGAN CLEARING CORP., a Delaware corporation formerly known as Bear, Stearns Securities Corp.; DELOITTE & TOUCHE LLP, a limited liability partnership; ALAN D. SCHWARTZ, an individual; ALAN C. GREENBERG, an individual; JOEY ZHOU, an individual; and GARRETT BLAND, an individual,<br><br>          Defendants. | 11 Civ. 5643 (RWS)<br><br>ECF Case<br><br><u>Oral Argument Requested</u> |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST DEFENDANTS JOE Y. ZHOU AND GARRETT BLAND

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Tel.: (212) 373-3000
Fax: (212) 757-3990

*Attorneys for Defendants Joe Y. Zhou and Garrett Bland*

## <u>TABLE OF CONTENTS</u>

Table of Authorities ................................................................................................. iii

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ....................................................................................................... 3

      A.     Relevant Parties ............................................................................... 3

      B.     Plaintiff's Allegations Concerning Purchases of BSC Stock .................. 3

      C.     Procedural History ........................................................................... 7

ARGUMENT ............................................................................................................ 9

I. WANG'S SECTION 10(b) CLAIMS AGAINST ZHOU AND BLAND DO NOT
MEET THE REQUIREMENTS OF THE PSLRA AND RULE 9(b) .............................. 9

      A.     The Complaint Fails To Plead Fraud With Particularity ..................... 9

      B.     Plaintiff Fails To Adequately Allege Scienter ..................................... 13

      C.     Wang Fails to Allege Reasonable Reliance ......................................... 15

II. WANG'S CALIFORNIA SECURITIES FRAUD CLAIMS MUST BE DISMISSED .......... 18

      A.     Plaintiff's State Securities Fraud Claims are Time-Barred ................... 18

      B.     Wang's State Law Securities Fraud Claims Fail To Adequately Allege
           Misstatements Or Omissions, Or Plead Fraud With Particularity ......... 19

III. WANG FAILS TO ADEQUATELY ALLEGE CLAIMS FOR BREACH OF
FIDUCIARY DUTY AND COMMON LAW FRAUD ................................................... 20

      A.     Wang's Claims are Time-Barred ....................................................... 20

      B.     Wang Has Failed To Plead Fraud With Particularity ........................... 21

      C.     Wang Has Not Pled That Zhou or Bland Had A Fiduciary Duty To Warn .......... 22

      D.     Wang's Conspiracy Claims Also Fail ................................................. 24

IV. WANG'S CLAIMS PURSUANT TO CAL. CORP. CODE § 17200 MUST BE
DISMISSED FOR FAILURE TO ALLEGE ANY UNDERLYING
VIOLATIONS ......................................................................................................... 25

CONCLUSION ........................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Acito* v. *IMCERA Grp. Inc.*,
    47 F. 3d 47 (2d Cir. 1995).................................................................................14

*Ajetunmobi* v. *Clarion Mortg. Capital, Inc.*,
    No. SACV 12-0568, 2012 WL 2945051 (C.D. Cal. July 17, 2012)................................24

*Am. High-Income Trust* v. *Allied Signal*,
    329 F. Supp. 2d 534 (S.D.N.Y. 2004).......................................................19, 20

*Anschutz Corp.* v. *Merrill Lynch & Co.*,
    690 F.3d 98 (2d Cir. 2012)..............................................................................10

*Apollo Cap. Fund* v. *Roth Cap. Partners*,
    158 Cal App. 4th 226 (Cal Ct. App. 2007). .................................................23

*Arei II Cases*,
    --- Cal. Rptr. 3d ----, 2013 WL 2356108 (Cal. Ct. App. May 29, 2013) .........................24

*ATSI Commc'ns, Inc.* v. *The Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)..............................................................................13

*Blue Tree Hotels Inv. (Canada)* v. *Starwood Hotels & Resorts Worldwide*,
    369 F.3d 212 (2d Cir. 2004)..............................................................................4

*Boca Raton Firefighters & Police Pension Fund* v. *Bahash*,
    506 F. App. 32 (2d Cir. 2012)........................................................................10

*Boguslavsky* v. *Kaplan*,
    159 F.3d 715 (2d Cir. 1998)............................................................................21

*Briosos* v. *Wells Fargo Bank*,
    737 F. Supp. 2d 1018 (S.D.N.Y. 2010).........................................................25

*Brown* v. *Cal. Pension Admin. & Consultants, Inc.*,
    45 Cal. App. 4th 333 (Cal. Ct. App. 1996) .............................................22, 23

*Brown* v. *E.F. Hutton Grp., Inc.*,
    991 F.2d 1020 (2d Cir. 1993)..........................................................................15

*Casey* v. *Merck & Co.*,
    653 F.3d 95 (2d Cir. 2011)..............................................................................19

*Centaur Classical Convertible Arbitrage Fund Ltd.* v. *Countrywide Fin. Corp.*,
    878 F. Supp. 2d 1009 (C.D. Cal. 2011) ...............................................................19

*City of Sterling Heights Police and Fire Ret. Sys.* v. *Abbey Nat'l, PLC*,
    423 F.Supp.2d 348 (S.D.N.Y. 2006)...................................................................12

*Daniels* v. *Bd. of Ret. of L.A. Cnty Emps. Ret. Ass'n*,
    No. B228240, 2011 WL 6004477 (Cal. Ct. App. Dec. 21, 2011) .....................24

*Deveny* v. *Entropin, Inc.*,
    139 Cal. App. 4th 408 (Cal. Ct. App. 2006) .....................................................20

*Duffy* v. *Cavalier*,
    215 Cal. App. 3d 1517 (Cal. Ct. App. 1989) .....................................................22

*ECA, Local 134 IBEW Joint Pension Trust of Chi.* v. *JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)........................................................................12, 13

*Fuller* v. *First Franklin Fin. Corp.*,
    --- Cal. Rptr. 3d ----, 2013 WL 1820047 (Cal. Ct. App. May 1, 2013) .....................20, 24

*Hatfield* v. *Halifax PLC*,
    564 F.3d 1177 (9th Cir. 2009) ..........................................................................19

*Heliotrope Gen., Inc.* v. *Ford Motor Co.*,
    189 F.3d 971 (9th Cir. 1999) .......................................................................10, 16

*Hunt* v. *Alliance N. Am. Gov't Income Trust, Inc.*,
    159 F.3d 723 (2d Cir. 1998).............................................................................16

*Hutchison* v. *Deutsche Bank Sec. Inc.*,
    647 F.3d 479 (2d Cir. 2011)..............................................................................11

*Ingels* v. *Westwood One Broad., Servs., Inc.*,
    129 Cal.App.4th 1050 (2005) ...........................................................................25

*In re DRDGOLD Ltd. Sec. Litig.*,
    472 F. Supp. 2d 562 (S.D.N.Y. 2007) ..............................................................12

*In re Dynex Capital, Inc. Sec. Litig.*,
    No. 05 Civ. 1897, 2006 WL 314524 (S.D.N.Y. Feb. 10, 2006) ........................14

*In re Initial Public Offering Sec. Litig.*,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003)...............................................................10

*In re Int'l Bus. Machines Corp. Sec. Litig.*,
    163 F.3d 102 (2d Cir. 1998)..............................................................................12

iv

*In re JP Morgan Chase Sec. Litig.*,
   363 F. Supp. 2d 595 (S.D.N.Y. 2005)............................................................14

*In re Merrill Lynch Auction Rate Sec. Litig.*,
   851 F. Supp. 2d 536-37 (S.D.N.Y. 2012) ...................................11, 13, 16, 20, 21

*In re N. Telecom Ltd. Sec. Litig.*,
   116 F. Supp. 2d 446 (S.D.N.Y. 2000)............................................................10

*In re Union Carbide Corp. Consumer Products Bus. Sec. Litig.*,
   666 F. Supp. 547 (S.D.N.Y. 1987)...............................................................11

*Jackson* v. *Fischer*,
   --- F.Supp.2d ----, 2013 WL 1089860 (N.D. Cal. Mar. 15, 2013)....................21

*Lasker* v. *N.Y. State Elec. & Gas Corp.*,
   85 F.3d 55 (2d Cir. 1996) ...........................................................................17

*Levitt* v. *J.P.Morgan Sec., Inc.*,
   710 F.3d 454 (2d Cir. 2013)........................................................................10

*Malin* v. *XL Capital Ltd.*,
   499 F. Supp. 2d 117 (D. Conn. 2007)...........................................................12

*Masters* v. *San Bernardino Cnty Emps. Ret. Ass'n*,
   37 Cal. Rptr. 2d 860 (Cal. Ct. App. 1995).....................................................24

*New* v. *L.F. Rothschild, Uterberg, Towbin*,
   651 F. Supp. 160 (S.D.N.Y. 1986)...............................................................12

*Novak* v. *Kasaks*,
   216 F.3d 300 (2d Cir. 2000)........................................................................14

*Petersen* v. *Sec. Settlement Corp.*,
   226 Cal. App. 3d. 1445 (Cal. Ct. App. 1991) ...........................................22, 23

*Podany* v. *Robertson Stephens, Inc.*,
   318 F. Supp. 2d 146 (S.D.N.Y. 2004)...........................................................15

*Rombach* v. *Chang*,
   355 F.3d 164 (2d Cir. 2004)........................................................................12

*S. Cherry St., LLC* v. *Hennessee Grp. LLC*,
   573 F.3d 98 (2d Cir. 2009)............................................................................9

*San Leandro Emergency Med. Grp. Profit Sharing Plan* v. *Philip Morris Cos.*,
   75 F.3d 801 (2d Cir. 1996)..........................................................................17

*SEC* v. *DiBella*,
    587 F.3d 553 (2d Cir. 2009)........................................................................15

*Soley* v. *Wasserman*,
    No 08 Civ. 9262, 2010 WL 931888 (S.D.N.Y. Mar. 12, 2010) ......................................21

*Sollberger* v. *Wachovia Sec., LLC*,
    No. SACV 09–0766 AG (ANx), 2010 WL 2674456 (C.D. Cal. June 30, 2010) .............21

*Starr ex rel. Estate of Sampson* v. *Georgeson S'holder, Inc.*,
    412 F.3d 103 (2d Cir. 2005)........................................................................16

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..............................................................................10, 13

*Yerkovich* v. *MCA*, Inc.,
    211 F.3d 1276 (9th Cir. 2000) .....................................................................22

## STATUTES

Private Securities Litigation Reform Act ("PSLRA"),
    15 U.S.C. § 78u-4(b)(2) ........................................................................ passim

Cal. Corp. Code § 25506............................................................................18

Cal. Corp. Code § 17200......................................................................2, 3, 25

Cal. Corp. Code § 25400....................................................................2, 18, 19

Cal. Corp. Code § 25401....................................................................2, 18, 19

Cal. Corp. Code § 25500........................................................................18, 19

Cal. Corp. Code § 25501........................................................................18, 19

Federal Rule of Civil Procedure 9(b)............................................................ passim

Federal Rule of Civil Procedure 12(b)(6) ...........................................................1

Securities Exchange Act of 1934, Section 10(b), 15 U.S.C. § 78j(b)................................ passim

## OTHER AUTHORITIES

17 C.F.R. § 230.501 ................................................................................16

Buckingham Research Group, *Liquidity Concerns Seem Overdone; But Lowering
    1Q08 EPS on Continuing Mortgage Market Woes* (March 11, 2008)...............................15

"Roger Wang," Forbes.com .................................................................................................3

Sandler O'Neill & Partners, *Is This To End Or Just Begin* (March 11, 2008) .............................15

U.S. Sec. & Exch. Comm'n, Answers to Frequently Asked Investor Questions
      Regarding The Bear Stearns Companies, Inc. ....................................................................5

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), defendants Joe Y. Zhou and Garrett Bland respectfully submit this memorandum of law in support of their motion to dismiss claims against them in the complaint filed on March 29, 2011 (the "Complaint").

## PRELIMINARY STATEMENT

Plaintiff Vivine Wang ("Plaintiff" or "Wang")—a multibillionaire investor who has bought and sold stock through multiple brokerage firms—purchased 150,000 shares in The Bear Stearns Companies Inc. ("Bear Stearns") through a brokerage account at Bear Stearns in the tumultuous days between March 6, 2008 and the near-collapse of Bear Stearns on March 14, 2008.  She purchased 100,000 of those shares *after* Bear Stearns announced at 9:00 a.m. on March 14 that it faced a liquidity crisis and had obtained an emergency $30 billion loan from JP Morgan Chase & Co ("JPMorgan").  Wang now seeks to shift the blame for her investment losses onto Bear Stearns, its auditor, certain of its senior executives, and also her retail broker (Joe Y. Zhou),[1] and another Bear Stearns employee (Garrett Bland) who allegedly spoke to her husband over a lunch table on March 11, 2008.  As explained below, Wang's claims against defendants Zhou and Bland are deficient as a matter of law, and should be dismissed.

Joe Zhou was a retail broker who opened a brokerage account for Wang with Bear Stearns at the end of February 2008.  The Customer Agreement signed by Wang made clear that Bear Stearns was acting as a broker-dealer or custodian only, and ***not*** as an investment advisor or fiduciary.  Soon after the account was opened, at the direction of Wang's husband, Roger Wang, Zhou executed orders for Wang in the stock of certain financial companies, including Bear Stearns.  Critically, Zhou is not alleged to have made any affirmative misstatements to Wang or her husband concerning these investments.  Rather, the Complaint only alleges that Zhou *omitted* to caution Wang or her husband about buying more Bear Stearns stock on March 14.  But Zhou

---

[1]    While the Complaint names "Joey Zhou," Mr. Zhou's actual name is Joe Y. Zhou.

was under no duty to caution the Wangs, and Bear Stearns had already publicly issued a press release that morning concerning the deterioration of its liquidity position.  Bear Stearns's press release was widely disseminated in the press, and a reasonable investor would have reviewed it before investing further.

Garrett Bland, another employee at Bear Stearns, is only alleged to have had one interaction with Plaintiff or her husband: on March 11, Bland happened to be seated at a table with Roger Wang at a conference, and is alleged to have told Roger Wang that Bear Stearns was "financially sound," and it was "a great time" to invest.  These comments, even if made, were statements of opinion that are not adequately alleged to have been false or misleading.  Nor does the Complaint adequately allege that Bland acted with scienter, or that the Wangs reasonably relied on his statements, since their next purchases were not until three days later, after Bear Stearns had issued a press release concerning its deteriorating liquidity position.

Thus, Wang's claims against Zhou and Bland under Section 10(b) of the Exchange Act should be dismissed because Wang fails to plead fraud with particularity, fails to adequately allege scienter, and fails to allege reasonable reliance.

Wang also brings four causes of action against Zhou and Bland under California law for: (i) breach of fiduciary duty and conspiracy to induce breach of fiduciary duty (¶¶ 64-69);[2] (ii) fraud and deceit and conspiracy to defraud (¶¶ 70-79); (iii) violations of California Corporations Code Sections 25400 and 25401 (¶¶ 80-86); and (iv) violations of California Corporations Code Section 17200 (¶¶ 87-91).  These claims fare no better.  As shown below, Wang's state law securities fraud claims are time-barred under the relevant two-year statute of limitations, and in any event not pled with particularity.  Her breach of fiduciary duty and

---

[2]     Citations in the form "¶ _" refer to paragraphs in the Complaint.  Citations in the form "CA ¶ _" refer to paragraphs in the Consolidated Class Action Complaint, (08 M.D.L. 1963 (S.D.N.Y.), Doc. No. 61) which Wang incorporates by reference into her Complaint.  (*See* ¶ 43).

common law fraud claims are time-barred under the relevant three-year statute of limitations, not

pled with particularity, and she does not sufficiently allege that either Zhou or Bland owed her a

fiduciary duty.  Finally, Wang's claim under Section 17200 must be dismissed because she has

failed to adequately plead an underlying violation.

Accordingly, all Wang's claims against Zhou and Bland should be dismissed.

## BACKGROUND

**A.    Relevant Parties**

**1.    Vivine Wang**

Plaintiff Vivine Wang is an individual residing in California.  (¶ 1)  She is

married to H. Roger Wang ("Roger Wang") (¶ 22), who is the chairman and CEO of the Golden

Eagle International Group, which owns and operates high-end retail department stores

throughout China and is traded on the Hong Kong exchange.  In its 2013 list of billionaires,

Forbes magazine estimated Roger Wang's net worth to be $3.8 billion.[3]

**2.    Joe Y. Zhou and Garrett Bland**

Wang alleges that at all relevant times Zhou and Bland worked for Bear Stearns in

its Century City, California office.  (¶¶ 18, 19)  Wang alleges that Zhou worked as a "broker-

dealer, the agent of a broker-dealer, and/or an investment advisor," (¶ 18) and Bland as a broker-

dealer and/or investment advisor with the title of "Senior Managing Director."  (¶ 19)

**B.    Plaintiff's Allegations Concerning Purchases of BSC Stock**

**1.    Wang Opens A Bear Stearns Brokerage Account in February 2008**

Wang alleges that beginning in the mid-1990s, Zhou provided advice to the Wang

family about investments.  (¶ 23)  In early 2008, after some time working with a different broker,

---

[3]    *See* "Roger Wang," Forbes.com, http://www.forbes.com/profile/roger-wang/ (last visited June 23, 2013).
(Chepiga Decl. ¶ 2; Ex. 1).

Wang and her husband contacted Zhou and asked to "place some stock orders with Bear Stearns." (¶ 24)  Zhou told her that a new account would need to be opened, and then met with Wang to execute the necessary paperwork.  (*Id.*)

On February 29, 2008, Wang entered into a Customer Agreement with Bear Stearns, which set forth the terms and conditions on which Bear Stearns "open[ed] and maintain[ed]" her account. [4]  (Chepiga Decl. ¶ 3; Ex. 2)  The Customer Agreement—in the very first section, on the very first page—made explicit that Bear Stearns was acting as Wang's broker-dealer or custodian only and not as investment advisor or fiduciary:

> (a)  A Bear Stearns entity will execute transactions accepted by it and/or will provide such other clearance, settlement and custody services in connection with the maintenance of your Account(s) at Bear Stearns.
>
> **(b)  Bear Stearns is acting as a broker-dealer and custodian, and not as (1) an investment adviser under the Investment Advisors Act of 1940, or (2) a "fiduciary" as defined in Section 3(21) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") or Section 4975 of the Internal Revenue Code of 1986, as amended ("Code"), with respect to your Account(s) under this Agreement. . . .** Neither Bear Stearns nor its employees are authorized to provide, and shall not provide, legal, tax or accounting advice or services and you will not solicit or rely upon any such advice from them whether in connection with transactions in any of your accounts or otherwise.  You have consulted or will consult with your own technical, legal, regulatory, tax, business, investment, financial and accounting advisors to the extent you deem necessary in determining the investment and trading strategy appropriate for you and the appropriateness of each transaction.

*Id.* at ¶ 1(a), (b) (emphasis added).

**2.      Plaintiff's Purchases of BSC Stock from March 6 to March 11**

Shortly after the new account was opened, Roger Wang began placing verbal orders through Zhou for purchases of stock in financial companies. (¶¶ 25-29)  Of relevance

---

[4]      As the Customer Agreement is incorporated by reference in the Complaint, the Court may consider it for purposes of the instant motion.  *See, e.g.*, *Blue Tree Hotels Inv. (Canada)* v. *Starwood Hotels & Resorts Worldwide*, 369 F.3d 212, 218 (2d Cir. 2004).

here, on March 6, he ordered 10,000 shares of Bear Stearns common stock ("BSC"). (¶ 27) He

placed additional orders for 20,000 BSC shares on March 10 and 11 respectively. (¶¶ 28-29)

The Complaint does not specifically allege that Zhou or Bland committed fraud in connection

with these purchases of BSC stock. Rather, as set forth below, the alleged misstatements or

omissions relate to the Wangs' purchases of additional shares on March 14. (¶¶ 29-30)

### 3.    Roger Wang's Meeting With Bland; Purchases On March 14

On March 11, Roger Wang attended a meeting (for the Asia Society) that was

hosted at the offices of Bear Stearns in Century City, California. At this meeting, which was

otherwise unrelated to Bear Stearns, Roger Wang happened to be seated at a table with Bland.

Bland is alleged to have told Roger Wang: "that Bear Stearns was financially sound, that its

stock value should be at least $85.00 per share, and that now was a great time to invest in the

stock." (¶ 30) In addition, Bland allegedly told Roger Wang "to buy as much BSC stock as he

could." (¶ 30) The Complaint does not provide support for its conclusory allegations that

Bland's statements were false when made, nor that Bland knew they were false.

Early in the week of March 10, rumors had begun to infiltrate the market about

Bear Stearns's liquidity. (CA ¶ 263) These rumors were false. As the SEC has concluded, in

the weeks leading up to March 10, 2008, Bear Stearns's "liquidity position had been relatively

stable, ranging between $15 and $20 billion."[5] As Wang (who has incorporated by reference the

Consolidated Class Action Complaint) concedes, on March 10, the Company's liquidity pool

stood at $18.1 billion (CA ¶ 492)— above the $17.4 billion in liquidity the Company had

reported as of the end of 2007 (2007 10-K at F-3). At the end of the day on March 11, 2008, the

---

[5]    U.S. Sec. & Exch. Comm'n, Answers to Frequently Asked Investor Questions Regarding The Bear Stearns
Companies, Inc., available at http://www.sec.gov/news/press/2008/2008-46.htm (last modified Oct. 22, 2008)
(Chepiga Decl. ¶ 4; Ex. 3).

Company's liquidity remained at $15.8 billion (adjusted for the release of customer protection funds) (CA ¶ 273, citing letter from SEC Chairman Cox to the Chairman of the Basel Committee on Banking Regulation dated March 20, 2008), well within the range of the preceding weeks.

The false market rumors about Bear Stearns's liquidity, however, later proved to be self-fulfilling.  Despite management's efforts, clients continued pulling their funds on March 12 and 13, drawing down the Company's liquidity pool.  (CA ¶¶ 280-81)  By the evening of Thursday, March 13, 2008, Bear Stearns's liquidity had declined to $2 billion.  (CA ¶ 280)  Because Bear Stearns could not open for business the next day without financing, it negotiated with JPMorgan for a $30 billion funding facility backstopped by the federal government.  (CA ¶ 285)  At 9:00 am on the morning of Friday, March 14, 2008, before the market opened, Bear Stearns issued a press release announcing the deterioration of its liquidity position, and the secured loan facility from JPMorgan.  (¶ 33)  Following this release, the price of Bear Stearns stock fell from $57 per share to $30 per share.  (CA ¶ 11)

At some point after the market opened on March 14, Roger Wang, allegedly unaware of Bear Stearns's press release, contacted Zhou and placed a verbal order for 200,000 additional shares of BSC.  (¶¶ 31-34)  The order, however, was only "partially filled," and, as a result, Wang was to receive 100,000 shares of BSC at approximately $34 per share.  (*Id.*)

The Complaint does not allege that Zhou made any affirmative misstatements to the Wangs.  Rather, Plaintiff only alleges that "at no time that day or ever did . . . Zhou warn, caution, or advise Plaintiff or her husband against buying any more BSC stock."  (¶ 31)  In placing this order on March 14, Roger Wang is also alleged to have relied on Bland's "favorable recommendation" from three days earlier.  (*Id.*)

Over the ensuing weekend, the loan facility did not calm the market's fears.  On Sunday, March 16, 2008, Bear Stearns announced an agreement for JPMorgan to purchase the Company for the equivalent of $2 per share.  (¶ 35)  According to the Complaint, this announcement is when the Wangs "learned of the fraud."  (¶ 35)  The Wangs immediately stopped payment "on the scheduled wire transfer for their final stock trades," and refused to pay for their purchases of BSC stock.  (¶ 35)  The following day, March 17, a representative of Bear Stearns demanded payment from the Wangs, but was referred to their lawyer.  (¶ 36)

## C.    Procedural History

### 1.    The Arbitration Against Vivine Wang

After the Wangs refused to pay for purchases of BSC stock, Bear Stearns—in accordance with the terms of the Customer Agreement—liquidated Wang's brokerage account and filed an arbitration claim to recover the money owed.  (*See* ¶¶ 38-39)  Wang refused to participate in the arbitration,[6] and Bear Stearns was eventually awarded $3,048,514.87 on June 9, 2009.  (¶ 40)  The award was confirmed and a judgment was entered by a district court in California on January 13, 2010.  (Chepiga Decl. ¶ 9)  Bear Stearns was also subsequently awarded attorneys' fees and costs.  (Chepiga Decl. ¶ 10)  Wang made multiple attempts to appeal the judgment and award of attorney's fees and costs, including most recently to the Ninth Circuit, but all her attempts were unsuccessful.  (Chepiga Decl. ¶ 11)

### 2.    Roger Wang's Complaint

While Bear Stearns's arbitration against Vivine Wang was proceeding, in April 2008, Roger Wang filed a complaint against Bear Stearns, Joe Zhou, and Garrett Bland in California state court, alleging state law violations in connection with the March 2008 purchases

---

[6]    The Wangs moved several times to enjoin or stay the arbitration, including a motion before this Court in April 2009.  (09 Civ. 1200 (S.D.N.Y.), Doc. No. 21.)  Those attempts were unsuccessful.

of BSC stock in his wife's account.  (No. BC388727 (Cal. Super. Ct., Los Angeles))  Roger

Wang alleged that he, not his wife, authorized the purchases, although the account was solely in

her name.  Roger Wang's suit, which asserted a putative class claim, was removed to the United

States District Court for the Central District of California, (08 Civ. 5523 (C.D. Cal.), Doc. No.

42), and then transferred by the MDL Panel to this Court for coordinated or consolidated pretrial

proceedings with the other related actions pending here.  (Chepiga Decl. ¶ 7)

### 3.    The Securities Action

Roger Wang's action was subsequently consolidated with related securities

actions under the caption *In re Bear Stearns Cos., Inc. Securities Litigation,* No. 08 Civ. 2793

(RWS) (the "Securities Action").  (08 M.D.L. 1963 (S.D.N.Y.), Doc. No. 31 ¶ 21)  In the

Securities Action, court-appointed Lead Plaintiff filed a Consolidated Class Action Complaint on

February 27, 2009 which asserted claims on behalf of "all persons and entities that, between

December 14, 2006 and March 14, 2008 . . . purchased or otherwise acquired the publicly traded

common stock [of Bear Stearns]."  (CA ¶ 1)

### 4.    Vivine Wang's Complaint

On March 29, 2011, more than three years after the near collapse of Bear Stearns

in mid-March 2008, Vivine Wang filed the instant Complaint in the United States District Court

for the Central District of California.  On August 15, 2011, the MDL Panel transferred Wang's

action to this Court for coordinated or consolidated pretrial proceedings with the Securities

Action.  (Chepiga Decl. ¶ 12; Ex.7)  On February 6, 2012, the Court granted Wang's application

to have her action coordinated, rather than consolidated, with the Securities Action.  (*See* 11 Civ.

5643 (S.D.N.Y.), Doc. No. 53.)

### 5.    Current Posture

After motion practice and discovery in the Securities Action, the parties reached a settlement, which was approved by the Court in orders and final judgments dated November 29, 2012.  (08 M.D.L. 1963 (S.D.N.Y.), Doc. Nos. 337-338)  On August 22, 2012, Vivine Wang opted-out of the class action settlement.  Roger Wang did not opt out, and thus any claims he had are barred.[7]

## ARGUMENT

## I.
## WANG'S SECTION 10(b) CLAIMS AGAINST ZHOU AND BLAND DO NOT MEET THE REQUIREMENTS OF THE PSLRA AND RULE 9(b)

Wang's Section 10(b) claims against Zhou and Bland should be dismissed because they: (1) fail to plead fraud with particularity; (2) fail to allege facts giving rise to a strong inference that Zhou or Bland acted with scienter; and (3) fail to allege reasonable reliance on any misstatements or omissions.

**A.    The Complaint Fails To Plead Fraud With Particularity**

Though Wang identifies statements or omissions that were allegedly made by Zhou and Bland which she claims were fraudulent, her allegations are conclusory and fail to explain how these statements or omissions were even false.

"To state a claim on which relief can be granted under § 10(b) and Rule 10b-5, a plaintiff must plead, *inter alia*, that . . . the defendant made a false representation as to a material fact, or omitted material information, and acted with scienter." *S. Cherry St., LLC* v. *Hennessee Grp. LLC*, 573 F.3d 98, 108 (2d Cir. 2009).  A plaintiff must also satisfy the heightened pleading requirements set forth in Rule 9(b) of the Federal Rules of Civil Procedure and the PSLRA.  *See*

---

[7]    Vivine Wang has filed a motion for an order suggesting remand of this case to the Central District of California. (11 Civ. 5643 (S.D.N.Y.), Doc. No. 59), which defendants have opposed.  That motion is currently pending.

*Boca Raton Firefighters & Police Pension Fund* v. *Bahash*, 506 F. App. 32, 35-36 (2d Cir.

2012).  Rule 9(b) and the PSLRA require that allegations of fraud be pled with "particularity."

Fed. R. Civ. P. 9(b); *see Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319-20

(2007).  "To satisfy this requirement the plaintiff must (1) specify the statements that the plaintiff

contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were

made, and (4) explain why the statements were fraudulent."  *Anschutz Corp.* v. *Merrill Lynch &*

*Co.*, 690 F.3d 98, 108 (2d Cir. 2012); *see also Tellabs, Inc.*, 551 U.S. at 321.

        With respect to Zhou, Plaintiff does not allege any affirmative misstatements.

Rather, she alleges that Zhou failed to "caution or advise Plaintiff or her husband against buying

any more BSC stock" on March 14 "or ever."  (¶ 31)  But, "[s]ilence [i.e., an omission] absent a

duty to disclose, is not misleading under Rule 10b-5."  *In re Initial Public Offering Sec. Litig.*,

241 F. Supp. 2d 281, 380 (S.D.N.Y. 2003) (citing *Basic* v. *Levinson*, 485 U.S. 224, 380 (1988)).

Here, the Complaint does not sufficiently allege that Zhou had any duty to advise Wang or

caution her about purchases of BSC shares.  Such a duty was disclaimed in the Customer

Agreement that Wang signed.  Nor is it alleged that Zhou had a duty to speak in order to correct

any prior statements—the Complaint does not allege that Zhou made any such statements. [8]  *See,*

*e.g.*, *In re N. Telecom Ltd. Sec. Litig.*, 116 F. Supp. 2d 446, 460-61 (S.D.N.Y. 2000) ("A duty to

correct or update, by definition, only arises with respect to 'prior' public statements.").  Nor

would Zhou have had a duty to correct any misstatement allegedly made by anyone else at Bear

Stearns, since there is no allegation that he was involved in any way in the making of those

statements.  *See Levitt* v. *J.P.Morgan Sec., Inc.*, 710 F.3d 454, 467-68 (2d Cir. 2013) (defendant

---

[8]    Of course, Zhou did not have a duty to disclose any information that was already public.  *See Heliotrope Gen.,*
*Inc.* v. *Ford Motor Co.*, 189 F.3d 971, 980–81 (9th Cir. 1999) (no duty to disclose information "that the market
was aware of" from news articles).

did not have a duty to disclose where complaint failed to allege the defendant's "direct involvement" in the scheme); *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 666 F. Supp. 547, 563 (S.D.N.Y. 1987) (absent evidence of direct participation in the preparation or issuance of documents, officers had no duty to disclose or correct any misstatements or omission of material fact in documents issued by corporation).

Further, even if Zhou had a duty to speak, which he did not, any omission would only be actionable as fraud under §10(b) to the extent it was "material." *See In re Merrill Lynch Auction Rate Sec. Litig.*, 851 F. Supp. 2d 512, 535-36 (S.D.N.Y. 2012). To establish materiality a plaintiff must demonstrate "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Hutchison* v. *Deutsche Bank Sec. Inc.*, 647 F.3d 479, 485 (2d Cir. 2011) (quotations omitted). Wang fails to allege that a representation from Zhou regarding the instability of Bear Stearns would have affected the decision to purchase stock. Moreover, Wang acknowledges that the substance of Zhou's alleged omission on March 14 *had already been disclosed* to the market at the time of the purchases that day. (¶¶ 33-34) Bear Stearns announced its loan facility with JPMorgan at 9:00 a.m., before the market opened. Any failure on Zhou's part to reference that release in a later conversation with Roger Wang cannot be material as a matter of law. *See In re Merrill Lynch*, 851 F. Supp. 2d at 535-36 (defendants prior disclosure of the substance of the alleged omission to the market rendered an omission immaterial).

To the extent that Wang's claims against Zhou are based on a failure to "ever" caution her or her husband about buying more BSC shares, not just on March 14, Wang fails to allege with any particularity why omissions on other occasions were materially misleading.

With respect to Bland, Plaintiff claims that Bland represented to Roger Wang during a conference on March 11 that Bear Stearns was a sound investment, that "its stock value should be at least $85.00 per share, . . . that [it] was a great time to invest in the stock," and that he would have purchased more shares at the time if he could.  (¶ 30)  Bland's alleged statements are opinion.  *See Rombach* v. *Chang*, 355 F.3d 164, 174 (2d Cir. 2004).  Prior cases have found statements virtually identical to Bland's to be inactionable as fraud:

- "[Bank] is in very good shape as it moves into its next stage of development." *City of Sterling Heights Police & Fire Ret. Sys.* v. *Abbey Nat'l, PLC*, 423 F. Supp. 2d 348, 358 (S.D.N.Y.2006)

- "[Company has a ] strong balance sheet." *In re DRDGOLD Ltd. Sec. Litig.*, 472 F. Supp. 2d 562, 568-69 (S.D.N.Y. 2007) (statement "more properly characterized as optimistic statements of opinion as opposed to fact")

- "[Company is] in very good shape . . problems reflect what every other reinsurer faced.  We have put it behind us . . . ." *Malin* v. *XL Capital Ltd.*, 499 F. Supp. 2d 117, 144 (D. Conn. 2007).

- Plaintiffs "were going to make good money on new issues." *New* v. *L.F. Rothschild, Uterberg, Towbin*, 651 F. Supp. 160, 163-64 (S.D.N.Y. 1986) (Sweet, J.) (finding that statements were nothing more than "the common puff of a salesman")

- "[Bank] set the standard for best practices in risk management techniques." *ECA, Local 134 IBEW Joint Pension Trust of Chi.* v. *JP Morgan Chase Co.*, 553 F.3d 187, 205-06 (2d Cir. 2009) ("almost every investment bank makes these statements.").

The statements attributed to Bland are entirely consistent with these examples.  Such corporate optimism has been held to be actionable only when the speaker provided "guarantees or  . . . specific statements of fact,  . . . or if [he] does not genuinely or reasonably believe them." *In re Int'l Bus. Machines Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998).  Wang makes no allegation that Bland ever made any guarantees or specific statements of fact, and she provides

no basis to believe that Bland did not subjectively believe the statements when made.

Accordingly, the Complaint fails to plead fraud with particularity against either Zhou or Bland.

**B.      Plaintiff Fails To Adequately Allege Scienter**

Under the PSLRA, "Congress required plaintiffs to plead with particularity facts giving rise to a strong—i.e., a powerful or cogent—inference" of fraudulent intent.  *Tellabs, Inc.*, 551 U.S. at 323 (citations omitted); 15 U.S.C. § 78u-4(b)(2).  A "strong inference" of scienter can be established by demonstrating facts either: "(1) showing that the defendants had both motive and opportunity to commit the [alleged] fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness."  *ATSI Commc'ns, Inc.* v. *The Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007); *see also ECA*, 553 F.3d at 198.  "[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, [a] court must take into account plausible opposing inferences," such that "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Tellabs*, 551 U.S. at 336.  Wang's claims against Zhou and Bland fall starkly short of this exacting standard.

*First*, the Complaint is devoid of factual allegations suggesting that Zhou and Bland had motive to commit fraud.  Plaintiff makes the passing allegation that Zhou and Bland misstated or omitted material facts "in an effort to maintain the artificially-inflated price of BSC common stock," (¶ 51), but such allegations are wholly insufficient.  The Second Circuit has held in numerous cases that "similar allegations of a generalized motive that could be imputed to any for-profit endeavor are not concrete enough to infer scienter."  *In re Merrill Lynch*, 851 F. Supp. at 528; *see ECA*, 553 F.3d at 200-01 (no inference of scienter could be drawn from allegations that defendants had a "desire to maximize corporation's profits," or "were motivated because

inflated stock price or improved corporate performance would increase their compensation");
*Acito* v. *IMCERA Grp. Inc.*, 47 F. 3d 47, 54 (2d Cir. 1995).

   *Second*, Wang fails to allege opportunity—that either Zhou or Bland were
actually in possession of, or had access to, material information about Bear Stearns's liquidity or
the value of its stock price that had not already been publicly disclosed.  Unlike the typical
securities fraud case involving statements by a company or its senior executives, here the
allegedly false statements were made by manager and a retail broker in the California branch
office.  Absent credible allegations that Zhou or Bland had access to nonpublic facts about Bear
Stearns's unfolding financial condition, Wang's claim cannot satisfy the PSLRA and the
particularity requirements of Rule 9(b).  *See In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ.
1897, 2006 WL 314524, at *8-9 (S.D.N.Y. Feb. 10, 2006) (dismissing claims where complaint
failed to allege that corporate officers "saw or had access to specific reports or statements that
indicated malfeasance, or that contradicted their public statements"), *rev'd in part*, 531 F.3d 190
(2d Cir. 2008).

   Nor does Wang provide any circumstantial evidence that would compensate for
her failure to allege motive and opportunity.  "When, as here, [plaintiff] ha[s] failed to plead
motive and opportunity . . . the strength of the circumstantial allegations must be
correspondingly greater."  *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 624
(S.D.N.Y. 2005) (*citing Kalnit* v. *Eichler*, 264 F.3d 131,142 (2d Cir. 2001).  Strong
circumstantial evidence of scienter would require specific allegations tending to support that
Zhou and Bland either:  (1) possessed knowledge or had access to information that renders their
alleged statements and omissions misleading; or (2) "ignored obvious signs of fraud."  *Novak* v.
*Kasaks*, 216 F.3d 300, 308-09 (2d Cir.), *cert. denied*, 531 U.S. 1012 (2000).  Here, to begin with,

14

there is no allegation that Zhou or Bland had access to information; nor do Wang's allegations give rise to a strong inference of recklessness or misbehavior.

The substance of what Zhou is alleged to have omitted was in fact already publicly disclosed at the time Roger Wang placed an order to buy additional shares on March 14. Thus, a more reasonable inference is that, far from trying to hide the press release from a customer, Zhou would have believed that a sophisticated investor who was placing an order for millions of dollars of BSC stock on March 14 would have been following the tumultuous events of that week, and would have already seen the press release.

As for Bland, there is no circumstantial evidence from which to infer that he did not subjectively believe that March 11, 2008 was in fact a good time to invest in Bear Stearns. Indeed, as Bear Stearns's stock price was declining, many investors perceived a good entry point to buy the stock, and analysts issued reports the exact same day recommending Bear Stearns as a buy,[9] or even a "strong buy."[10]   That Bland's prediction turned out to be wrong in the end is, of course, irrelevant.  *See Podany* v. *Robertson Stephens, Inc.*, 318 F. Supp. 2d 146, 155 (S.D.N.Y. 2004) ("[L]iability premised on objective wrongness of an opinion alone would risk holding federal securities law defendants liable for good-faith, if negligent, errors.").

## C.   Wang Fails to Allege Reasonable Reliance

A plaintiff alleging fraud must also plead reasonable reliance on the misstatements or omissions.  *SEC* v. *DiBella*, 587 F.3d 553, 563 (2d Cir. 2009).  The reasonableness of reliance turns on several factors; no single one is "dispositive."  *Brown* v. *E.F. Hutton Grp., Inc.*, 991 F.2d 1020, 1032 (2d Cir. 1993).  Factors include: "(1) The sophistication and expertise of the plaintiff in financial and securities matters; (2) the existence of longstanding

---

[9]   Sandler O'Neill & Partners, *Is This To End Or Just Begin* (March 11, 2008).  (Chepiga Decl. ¶ 5; Ex. 4)
[10]   The Buckingham Research Group, *Liquidity Concerns Seem Overdone; But Lowering 1Q08 EPS on Continuing Mortgage Market Woes* (March 11, 2008). (Chepiga Decl. ¶ 6; Ex. 5)

business or personal relationships; (3) access to the relevant information; (4) the existence of a

fiduciary relationship; (5) concealment of the fraud; (6) the opportunity to detect the fraud; (7)

whether the plaintiff initiated the stock transaction or sought to expedite the transaction; and (8)

the generality or specificity of the misrepresentations." *In re Merrill Lynch,* 851 F. Supp. 2d at

536-37. These factors all suggest that the Wangs cannot allege reasonable reliance here.

*First*, it is indisputable that the Wangs are financially sophisticated, given their

business experience and wealth.  They clearly satisfy the definition of "Accredited Investor"

under the federal securities laws.  *See* 17 C.F.R. § 230.501.

*Second*, as the Customer Agreement made clear, Bear Stearns and its employees

were acting only as a broker-dealer and custodian with respect to Wang's account, *not* an

investment advisor or fiduciary.  (Chepiga Decl. ¶ 3; Ex. 2 ¶ 1(b))  Thus, Wang was on notice

that Bear Stearns was serving only as her broker, not her investment advisor.

*Third*, the specific misstatements or omissions alleged by Wang are too thin to

have led to reasonable reliance.  With respect to Zhou, Wang concedes that Bear Stearns issued a

press release at 9:00 a.m. on the morning of March 14, prior to any purchases that day in her

account.  (¶¶ 33, 34)  At a minimum, this release disclosed to the market the liquidity

deterioration at Bear Stearns.  As a sophisticated investor, Wang cannot claim justifiable reliance

on Zhou's failure to mention an already public press release.  *See, e.g.*, *Hunt* v. *Alliance N. Am.*

*Gov't Income Trust, Inc.*, 159 F.3d 723, 730 (2d Cir. 1998) (finding that in light of adequate

disclosures, "no reasonable investor could have been misled"); *see also Heliotrope Gen., Inc.*,

189 F.3d at 980–81 (no duty to disclose information "that the market was aware of" from news

articles).  This is true regardless of whether Wang was actually aware of the release.  *Starr ex rel.*

*Estate of Sampson* v. *Georgeson S'holder, Inc.*, 412 F.3d 103, 109-10 (2d Cir. 2005) (quoting

*Brown*, 991 F.2d at 1032) ("[A]n investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered the truth.").

With respect to Bland, his statements of opinion are too generic to have induced a reasonable investor to rely on them.  For example, in *San Leandro Emergency Med. Grp. Profit Sharing Plan* v. *Philip Morris Cos.*, 75 F.3d 801, 811 (2d Cir. 1996), the Second Circuit held that "general announcements by Philip Morris that it was 'optimistic' about its earnings and 'expected' Marlboro to perform well . . .[could not] have misled a reasonable investor . . . .".  *See also Lasker* v. *N.Y. State Elec. & Gas Corp.*, 85 F.3d 55, 59 (2d Cir. 1996) (company's statement that it would have "continued prosperity" was not a guarantee against stock price declines, and just "the type of 'puffery' that this and other circuits have consistently held to be inactionable").

Moreover, any reliance on Bland's alleged statements was not reasonable because Wang only alleges reliance on Bland's statements in connection with purchases on March 14. (¶ 31) ("On Friday, March 14, . . . with reasonable reliance on Defendant Bland's favorable recommendation . . . Plaintiff's husband placed another verbal order . . . .").  Plaintiff's purchases on March 14 occurred *after* Bear Stearns Stearns's public announcement of its deteriorating liquidity and the emergency loan from JPMorgan.  (¶¶ 33-34)  In the days and hours leading up to that press release, Bear Stearns had experienced a lightning fast, panic-driven, run on the bank.  Events were unfolding so quickly during that tumultuous week (and were so widely-reported in the press) that it was not reasonable for a sophisticated investor like Wang to have relied on Friday, March 14 on statements that Bland allegedly made back on Tuesday, March 11. The world was a different place.

**II.**
**WANG'S CALIFORNIA SECURITIES FRAUD CLAIMS MUST BE DISMISSED**

Count V of the Complaint asserts claims against Zhou and Bland for securities fraud under §§ 25400 and 25401 of California Corporations Code.  These claims must be dismissed because: (1) they are time-barred; and (2) Wang fails to adequately allege misstatements or omissions, or plead fraud with particularity.

**A.      Plaintiff's State Securities Fraud Claims are Time-Barred**

Under California law, Wang had "two years after the discovery . . . of the facts constituting the violation" to assert her state law securities fraud claims.  Wang alleges substantive violations of both §§ 25400 and 25401, for which §§ 25500 and 25501, respectively, provide causes of action.  In turn, Section 25506 provides a two-year limitations period from the time of discovery for any causes of action arising under §§ 25500 and 25501.  *See* Cal. Corp. Code § 25506(b) (". . . no action shall be maintained to enforce any liability created under Section 25500, 25501, or 25502  . . . unless brought before the expiration of five years after the act or transaction constituting the violation or the expiration of two years after the discovery by the plaintiff of the facts constituting the violation, whichever shall first expire").  Wang's own Complaint demonstrates that she discovered her claims on March 16, 2008, when the merger between Bear Stearns and JPMorgan was announced and when Wang stopped payments on the purchases of BSC because she had "learned of the fraud."  (¶ 35)  Accordingly, Wang had two years from the date of discovery—until March 16, 2010—to bring these claims.  Wang's Complaint, however, was not filed until March 29, 2011, and thus is time-barred.

Nor were these claims tolled during the pendency of the Securities Action.  "[A] federal court evaluating the timeliness of state law claims must look to the law of the relevant state to determine whether, and to what extent, the statute of limitations should be tolled by the

filing of a putative class action in another jurisdiction."  *Casey* v. *Merck & Co.*, 653 F.3d 95, 100

(2d Cir. 2011).  Here, "California has not adopted such *American Pipe* tolling where the class

action was filed in a foreign jurisdiction."  *See Hatfield* v. *Halifax PLC*, 564 F.3d 1177, 1187

(9th Cir. 2009) (quoting *Clemens* v. *Daimler Chrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir.

2008)); *Centaur Classical Convertible Arbitrage Fund Ltd.* v. *Countrywide Fin. Corp.*, 878

F. Supp. 2d 1009, 1017 (C.D. Cal. 2011) (rejecting argument that prohibition against cross-

jurisdictional tolling should not apply because the class action and subsequent action were both

filed in the same federal court, because cross-jurisdictional tolling "includes all situations where

a class action is filed outside the . . . state court system").

**B.      Wang's State Law Securities Fraud Claims Fail To Adequately Allege
         Misstatements Or Omissions, Or Plead Fraud With Particularity**

Wang's claims under §§ 25400 and 25401, which are predicated on the same

allegations as her claims under § 10(b), also fail to adequately allege misstatements or omissions

by Zhou or Bland, or plead fraud with particularity.

California Corporation Code § 25400 prohibits the making of false or misleading

statements of material fact for the purpose of inducing the purchase or sale of a security.[11]

Section 25401 prohibits any person from selling a security in the state of California "by means of

any written or oral communication which includes an untrue statement of a material fact or omits

to state a material fact necessary in order to make the statements made . . . not misleading."[12]

Allegations of fraud must be plead with particularity in accordance with the heightened pleading

---

[11]   California Corporation Code § 25400 makes it unlawful for anyone in California "to make, for the purpose of
       inducing the purchase or sale of such security by others, any statement which was, at the time and in the light of
       the circumstances under which it was made, false or misleading with respect to any material fact, or which
       omitted to state any material fact necessary in order to make the statements made, in the light of the
       circumstances under which they were made, not misleading, and which he knew or had reasonable ground to
       believe was so false or misleading."  Cal. Corp. Code § 25400(d).

[12]   The Complaint also references § 25500 and §25501, which, respectively, provide causes of action for violations
       of § 25400 and §25401.  *See, e.g., Am. High-Income Trust* v. *Allied Signal*, 329 F. Supp. 2d 534, 544, 548
       (S.D.N.Y. 2004).

standard set forth in Rule 9(b). *Am. High-Income Trust*, 329 F. Supp. 2d at 544; *In re Merrill Lynch*, 851 F. Supp. 2d at 545 ("both § 25500 and § 25401 are claims sounding in fraud and are subject to the heightened pleading standard set forth in Fed. R. Civ. P. 9(b) as well as the general requirement that the pleadings raise a 'plausible' and not merely possible claim for relief"). As described in detail in Section I, *supra*, Plaintiff's allegations regarding misrepresentations and omissions made by Zhou and Bland are conclusory, and fail to provide any explanation as to why the statements or omissions were fraudulent or misleading when made. Accordingly, Count V of the Complaint should be dismissed as against both Zhou and Bland.

### III.
### WANG FAILS TO ADEQUATELY ALLEGE CLAIMS FOR BREACH OF FIDUCIARY DUTY AND COMMON LAW FRAUD

Counts III and IV of the Complaint allege, respectively, state law breach of fiduciary duty and common law fraud claims against Zhou and Bland. These claims must be dismissed because: (1) they are time-barred under California's three-year statute of limitations; (2) they are not pled with particularity; and (3) Wang has failed to adequately allege that Zhou or Bland owed her a fiduciary duty. In addition, Wang's related claims for conspiracy fail as well.

**A.     Wang's Claims are Time-Barred**

Under California law, claims for breach of fiduciary duty that sound in fraud and common law fraud must be brought within three years from the date the Plaintiff "discover[ed] the fraud or facts that would lead a reasonably prudent person to suspect fraud." *See Deveny* v. *Entropin, Inc.*, 42 Cal. Rptr. 3d 807, 816 (Cal. Ct. App. 2006); *Fuller* v. *First Franklin Fin. Corp.*, --- Cal. Rptr. 3d ----, 2013 WL 1820047, at *4 (Cal. Ct. App. May 1, 2013). The Complaint on its face shows that Wang did not file her claims within three years from the date of discovery. As described in Section II.A, *supra*, Wang discovered her claims on March 16, 2008.

Accordingly, Wang had three years—until March 16, 2011—to bring these claims.  Her

Complaint was not filed until March 29, 2011, and thus these claims are time-barred.[13]

## B.     Wang Has Failed To Plead Fraud With Particularity

Since Wang's breach of fiduciary duty and common law fraud claims are based

on the same allegations as her Section 10(b) claims,[14] her allegations must comport with the

particularity requirements of Rule 9(b).  *See Sollberger* v. *Wachovia Sec., LLC*, No. SACV 09–

0766 AG (ANx), 2010 WL 2674456, at *7 (C.D. Cal. June 30, 2010); *Soley* v. *Wasserman*, No

08 Civ. 9262, 2010 WL 931888, at *7 (S.D.N.Y. Mar. 12, 2010) ("Rule 9(b) also applies to

breach of fiduciary duty claims where the breach is premised on the defendant's fraudulent

conduct, such as an attempt to induce action or inaction on the part of . . . investors by means of

falsehoods or material omissions.") (internal quotations omitted); *Jackson* v. *Fischer*, ---

F.Supp.2d ----, 2013 WL 1089860, at *16 (N.D. Cal. Mar. 15, 2013) ("[I]n federal court,

allegations of [common law] fraud in civil cases are subject to the particularity requirements of

Rule 9(b).").  As set forth above in Section I.B., *supra*, Wang has failed to plead fraud with the

particularity required by Rule 9(b), and, accordingly, her claims for breach of fiduciary duty and

common law fraud must be dismissed.  *See Jackson*, 2013 WL 1089860, at *16; *In re Merrill*

*Lynch*, 851 F. Supp. 2d at 541.

---

[13]   As with Plaintiff's state securities fraud claims discussed in Section II.A, *supra*, Plaintiff's state law claims for breach of fiduciary duty and common law fraud were not tolled due to the pendency of the Securities Action.

[14]   To the extent, Plaintiff asserts breach of fiduciary duty claims against Zhou and Bland based on any alleged "mishandling of her [stock] orders . . . [and by] placing their interests ahead of Plaintiff's," (¶ 67), such claims fail because the Complaint is devoid of any allegations tending to show that Zhou and Bland mishandled Plaintiff's account or were in anyway involved with the management of her account after March 14, 2008. Moreover, Bear Stearns's sale of Plaintiff's shares was the subject of an arbitration before the Financial Industry Regulatory Authority, which plaintiff correctly notes, resulted in a judgment for Bear.  (¶¶ 40-41)  *See* *Boguslavsky* v. *Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (affirming dismissal of claims based on collateral estoppel where claims had previously been presented to and decided by NASD arbitration panel).

**C.      Wang Has Not Pled That Zhou or Bland Had A Fiduciary Duty To Warn**

Wang's Complaint also fails to allege that either Zhou or Bland had a fiduciary duty to warn her against additional purchases of BSC stock.  Under California law, the scope of a duty that a broker owes his customers is entirely dependent on the nature of the parties' relationship, and does not include the duty to disclose, advise or warn about an investment unless the broker was acting in an advisory capacity.  *Brown* v. *Cal. Pension Admin. & Consultants, Inc.*, 45 Cal. App. 4th 333, 348 (Cal. Ct. App. 1996).

First and foremost, courts have declined to find a duty to warn where, as here, a contract disclaimed such a relationship.  *See Yerkovich* v. *MCA*, Inc., 211 F.3d 1276 (9th Cir. 2000) (citing the existence of a contract expressly disclaiming the existence of a fiduciary relationship as evidence that no such relationship existed), *cert. denied*, 531 U.S. 871 (2000); *Petersen* v. *Sec. Settlement*, 226 Cal. App. 3d, 1445, 1454-55 (Cal. Ct. App. 1991) (same).  The Customer Agreement signed by Wang made plain that Bear Stearns would not be acting as an investment advisor or fiduciary.  *See* Chepiga Decl. ¶ 3; Ex. 2 ¶ 1(b) (disclaiming Bear Stearns's role as investment advisor and providing that Plaintiff would consult with her own "investment, financial and accounting advisors to the extent [she] deem[ed] necessary in determining the investment and trading strategy appropriate for [her]").

Further, in assessing the relationship between a broker and customer, California courts consider "the relative sophistication and experience of the customer; the customer's ability to evaluate the broker's recommendations and exercise an independent judgment thereon; the nature of the account, whether discretionary or nondiscretionary; and the actual financial situation and needs of the customer."  *Duffy* v. *Cavalier*, 215 Cal. App. 3d 1517, 1536, n.10 (Cal. Ct. App. 1989).  Where a broker serves only to execute investment decisions made by a client, there is no "duty to notify the customer of the risky nature of an investment, or . . . of the poor

performance of similar investments held by different customers." *Brown*, 45 Cal. App. 4th at 348; *see Petersen*, 226 Cal. Ct. App. 3d at 1454-55 (clearing broker that did not provide investment advice to its customers had no duty to warn her about the risky nature of investments).  Here, Wang and her husband were clearly extremely wealthy and sophisticated investors with the background and financial means necessary to exercise independent judgment. Indeed, they appeared to have a strategy of investing in the stock of financial companies in the height of the financial panic, as Bear Stearns was not the only financial stock they were acquiring at the time.  (¶¶ 25-29)

　　　　　With respect to Zhou specifically, Wang alleges that, in the mid-1990s, Zhou "began advising [her] and her family about investments," (¶ 23); that he provided advice about "one or more purchases at issue in this case," (¶ 21); but did not "warn, caution, or advise . . . against buying more BSC stock." (¶ 31)  But Plaintiff does not allege that her BSC purchases were solicited by Zhou, does not describe any advice provided by Zhou, and does not state that she was persuaded by Zhou's advice.  To the contrary, at most her allegations demonstrate that, after some time "using a different broker," (¶ 24) the Wangs contacted Zhou to set-up a brokerage account at Bear Stearns, and that, through him, Roger Wang placed orders for purchases of stock in several financial institutions.  These allegations, even if proven, are insufficient to show that Zhou had a duty to advise Wang about the riskiness of her investments.

　　　　　With respect to Bland, Wang's allegations fail to allege any duty whatsoever. "Before a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law."  *Apollo Cap. Fund* v. *Roth Cap. Partners,* 158 Cal. App. 4th 226, 246 (Cal. Ct. App. 2007).  The Complaint is devoid of allegations that Bland intended to act

on the Wangs' behalf or exercised control over Plaintiff's account.  While the Complaint alleges that Bland knew that Roger Wang was a customer of Bear Stearns, that is insufficient to establish a fiduciary relationship between the Plaintiff and Bland simply because Bland was an employee of Bear Stearns.  *See Daniels* v. *Bd. of Ret. of L.A. Cnty Emps. Ret. Ass'n*, No. B228240, 2011 WL 6004477, at *6 (Cal. Ct. App. Dec. 21, 2011) ("As employees, the individual defendants were not in a fiduciary relationship with plaintiff and they owed him no fiduciary duty as a matter of law.") (citations omitted); *Masters* v. *San Bernardino Cnty Emps. Ret. Ass'n*, 37 Cal. Rptr. 2d 860, 870 (Cal. Ct. App. 1995) (employee of retirement association owed no fiduciary duty to claimant).

**D.     Wang's Conspiracy Claims Also Fail**

Plaintiff's claims for conspiracy to defraud and conspiracy to induce breach of a fiduciary duty also fail.  As an initial matter, these claims are time-barred as "allegation[s] of a conspiracy of a civil action [do] not affect the limitations period for the substantive theory of liability involved."  *Fuller*, 2013 WL 1820047, at *4.  Also, since Wang's substantive claims against Zhou and Bland relating to common law fraud and breach of fiduciary duty must be dismissed for failure to adequately allege fraud, or plead it with particularity, so too should her conspiracy claims be dismissed for the same reasons.  *See Ajetunmobi* v. *Clarion Mortg. Capital, Inc.*, No. SACV 12-0568, 2012 WL 2945051, at *5 (C.D. Cal. July 17, 2012) (dismissing claims for fraud and conspiracy to defraud where allegations failed to comport with particularity requirements of Rule 9(b)).

Moreover, Plaintiff has not adequately pled that Zhou and Bland were participants in a conspiracy, or with whom they conspired.  *See Arei II Cases*, --- Cal. Rptr. 3d ----, 2013 WL 2356108, at *11 (Cal. Ct. App. May 29, 2013) (plaintiff must allege facts sufficient for the court to infer that each alleged conspirator "acted in concert and came to a mutual understanding to

24

accomplish a common and unlawful plan, . . . .  It is not enough that the [alleged conspirators] knew of an intended wrongful act, they must agree—expressly or tacitly—to achieve it.").  Bare, conclusory allegations of participation in a conspiracy are insufficient.  *Id.*

## IV.
## WANG'S CLAIMS PURSUANT TO CAL. CORP. CODE § 17200 MUST BE DISMISSED FOR FAILURE TO ALLEGE ANY UNDERLYING VIOLATIONS

Finally, Count VI asserts claims under California Business & Professions Code § 17200 for unlawful business practices.  To state a claim under § 17200, a plaintiff must plead, *inter alia*, a predicate violation of an underlying law.  *Ingels* v. *Westwood One Broad., Servs., Inc.*, 28 Cal. Rptr. 3d 933, 938 (Cal. Ct. App. 2005) (a defendant "cannot be liable under § 17200 for committing unlawful business practices without having violated another law").  Because Wang has not sufficiently plead a viable primary violation by Zhou or Bland, her § 17200 claims must be dismissed.  *Briosos* v. *Wells Fargo Bank*, 737 F. Supp. 2d 1018, 1033 (N.D. Cal. 2010).

## CONCLUSION

For the foregoing reasons, Wang's claims against defendants Zhou and Bland should be dismissed in their entirety with prejudice.

Dated:   July 2, 2013
         New York, New York

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:  /s/ Eric S. Goldstein _____

   Brad S. Karp (bkarp@paulweiss.com)
   Eric S. Goldstein (egoldstein@paulweiss.com)
   Jessica S. Carey (jcarey@paulweiss.com)
   Jonathan Hurwitz (jhurwitz@paulweiss.com)
1285 Avenue of the Americas
New York, New York 10019-6064
Tel.    (212) 373-3000
Fax    (212) 757-3980

*Attorneys for Defendants Joe Zhou and Garrett Bland*

25