UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

VIVINE H. WANG,

     Plaintiff,     11 Civ. 5643

 -against-        OPINION

THE BEAR STEARNS COMPANIES LLC,
J.P. MORGAN SECURITIES LLC,
J.P. MORGAN CLEARING CORP.,
DELOITTE & TOUCHE LLP,
ALAN D. SCHWARTZ, ALAN C. GREENBERG,
JOEY ZHOU, and GARRETT BLAND,

      Defendants.

------------------------------------X



A P P E A R A N C E S:

 Attorneys for the Plaintiff

 GHODS LAW FIRM
 2100 N. Broadway #300
 Santa Ana, CA 92706
 By: Mohammed K. Ghods, Esq.
   William Stahr, Esq.
   Jeremy A. Rhyne, Esq.


 Attorneys for Defendants Joe Zhou and Garrett Bland

 PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
 1285 Avenue of the Americas
 New York, NY 10019
 By: Brad S. Karp, Esq.
   Eric S. Goldstein, Esq.
   Jessica S. Carey, Esq.
   Jonathan Hurwitz, Esq.

**Sweet, D.J.**

Defendants Joe Y. Zhou ("Zhou") and Garrett Bland ("Bland") (collectively, the "Defendants") have moved pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) to dismiss the claims against them in the complaint filed on March 29, 2011 (the "Complaint") by plaintiff Vivine H. Wang ("Wang" or the "Plaintiff"). Upon the conclusions set forth below, the motion is granted and the Complaint is dismissed as to Zhou and Wang with leave granted to replead within 20 days.

## Prior Proceedings

Wang purchased 150,000 shares of The Bear Stearns Company Inc. ("Bear Stearns") between March 6, 2008 and March 14, 2008 through a Bear Stearns brokerage account upon the order of her husband, Roger Wang ("Roger Wang," collectively with Plaintiff the "Wangs"). The purchase and its circumstances are the subject of the Complaint. The Wangs refused payment on the purchase.

After the Wangs refused to pay for purchases of Bear Sterns stock, Bear Stearns liquidated Wang's brokerage account

1

and filed an arbitration claim to recover the money owed. (*See*
¶¶ 38-39).[1] Wang refused to participate in the arbitration, and
Bear Stearns was eventually awarded $3,048,514.87 on June 9,
2009. (¶ 40). The award was confirmed and a judgment was entered
by a district court in California on January 13, 2010.  Bear
Stearns was also subsequently awarded attorneys' fees and costs.

While Bear Stearns's arbitration against Vivine Wang
was proceeding, in April 2008, Roger Wang filed a complaint
against Bear Stearns, Zhou, and Bland in California state court,
alleging state law violations in connection with the March 2008
purchases of Bear Sterns stock in his wife's account. (No.
BC388727 (Cal. Super. Ct., Los Angeles)).  Roger Wang alleged
that he, not his wife, authorized the purchases, although the
account was solely in her name. Roger Wang's suit, which
asserted a putative class claim, was removed to the United
States District Court for the Central District of California (08
Civ. 5523 (C.D. Cal.), Doc. No. 42), and then transferred by the
MDL Panel to this Court for coordinated or consolidated pretrial
proceedings with the other related actions pending here.

---

[1]     Citations in the form "¶ __ " refer to paragraphs in the Complaint.
Citations in the form "CA ¶ __ " refer to paragraphs in the Consolidated Class
Action Complaint (08 MDL 1963 (S.D.N.Y.), Doc. No. 61), which Wang
incorporated by reference into her Complaint. (*See* ¶ 43).

Roger Wang's action was subsequently consolidated with related securities actions under the caption *In re Bear Stearns Cos., Inc. Securities Litigation*, No. 08 Civ. 2793 (the "Securities Action"). (08 M.D.L. 1963 (S.D.N.Y.), Doc. No. 31 ¶ 21). In the Securities Action, court-appointed Lead Plaintiff filed a Consolidated Class Action Complaint on February 27, 2009, which asserted claims on behalf of "all persons and entities that, between December 14, 2006 and March 14, 2008 . . . purchased or otherwise acquired the publicly traded common stock [of Bear Stearns]." (CA ¶ 1).

On March 29, 2011, Wang filed the instant Complaint in the United States District Court for the Central District of California. On August 15, 2011, the MDL Panel transferred Wang's action to this Court for coordinated or consolidated pretrial proceedings with the Securities Action. On February 6, 2012, Wang's application to have her action coordinated, rather than consolidated, with the Securities Action was granted. (*See* 11 Civ. 5643 (S.D.N.Y.), Doc. No. 53).

After motion practice and discovery in the Securities Action, the parties reached a settlement, which was approved by the Court in the orders and final judgments dated November 29,

3

2012. (08 M.D.L. 1963 (S.D.N.Y.), Doc. Nos. 337-338). On August

22, 2012, Vivine Wang opted-out of the class action settlement.[2]

**Allegations of the Complaint**

The Complaint makes the following allegations. Vivine

Wang is an individual residing in California. (¶ 1). Zhou and

Bland worked for Bear Stearns in its Century City, California

office. (¶¶ 18, 19). Wang alleges that Zhou worked as a "broker-

dealer, the agent of a broker-dealer, and/or an investment

advisor" (¶ 18), and Bland as a broker-dealer and/or investment

advisor with the title of "Senior Managing Director." (¶ 19).

Beginning in the mid-1990s, Zhou provided investment

advice to the Wang family. (¶ 23). In early 2008, after some

time working with a different broker, Wang and her husband

contacted Zhou and asked to "place some stock orders with Bear

Stearns." (¶ 24). Zhou told her that a new account would need to

be opened, and then met with Wang to execute the necessary

paperwork. (Id.).

On February 29, 2008, Wang entered into a Customer

Agreement with Bear Stearns, which set forth the terms and

---

[2]     Roger Wang did not opt out, and thus any claims he had are barred.

conditions on which Bear Stearns "open[ed] and maintain[ed]" her

account. (Chepiga Decl. ¶ 3, Ex. 2). The Customer Agreement

stated:


    (a)  A Bear Stearns entity will execute transactions
           accepted by it and/or will provide such other
           clearance, settlement and custody services in
           connection with the maintenance of your
           Account(s) at Bear Stearns.

    (b)  Bear Stearns is acting as a broker-dealer and
           custodian, and not as (1) an investment adviser
           under the Investment Advisors Act of 1940, or (2)
           a "fiduciary" as defined in Section 3(21) of the
           Employee Retirement Income Security Act of 1974,
           as amended ("ERISA") or Section 4975 of the
           Internal Revenue Code of 1986, as amended
           ("Code"), with respect to your Account(s) under
           this Agreement. . . . Neither Bear Stearns nor
           its employees are authorized to provide, and
           shall not provide, legal, tax or accounting
           advice or services and you will not solicit or
           rely upon any such advice from them whether in
           connection with transactions in any of your
           accounts or otherwise. You have consulted or will
           consult with your own technical, legal,
           regulatory, tax, business, investment, financial
           and accounting advisors to the extent you deem
           necessary in determining the investment and
           trading strategy appropriate for you and the
           appropriateness of each transaction.

(*Id.* at ¶ 1(a), (b)).


      Shortly after the new account was opened, Roger Wang

began placing verbal orders through Zhou for purchases of stock

in financial companies. (¶¶ 25-29). On March 6, 2008, he ordered

5

10,000 shares of Bear Stearns common stock ("BSC"). (¶ 27). He placed additional orders for 20,000 BSC shares on March 10 and 11 respectively. (¶¶ 28-29).

On March 11, 2008, Roger Wang attended a meeting (for the Asia Society) that was hosted at the offices of Bear Stearns in Century City, California. (¶ 30). At this meeting Roger Wang was seated at a table with Bland. Bland is alleged to have told Roger Wang: "that Bear Stearns was financially sound, that its stock value should be at least $85.00 per share, and that now was a great time to invest in the stock." (*Id.*). In addition, Bland allegedly told Roger Wang "to buy as much BSC stock as he could." (*Id.*).

Early in the week of March 10, rumors had begun to infiltrate the market about Bear Stearns's liquidity. (CA ¶ 263). On March 10, 2008, the Company's liquidity pool stood at $18.1 billion. (CA ¶ 492). At the end of the day on March 11, 2008, the Company's liquidity remained at $15.8 billion (adjusted for the release of customer protection funds) (CA ¶ 273, citing letter from SEC Chairman Cox to the Chairman of the Basel Committee on Banking Regulation dated March 20, 2008), well within the range of the preceding weeks.

6

Clients continued pulling their funds on March 12 and
13, drawing down the Company's liquidity pool. (CA ¶¶ 280-81).
By the evening of Thursday, March 13, 2008, Bear Stearns's
liquidity had declined to $2 billion. (CA ¶ 280). Because Bear
Stearns could not open for business the next day without
financing, it negotiated with JPMorgan for a $30 billion funding
facility backstopped by the federal government. (CA ¶ 285). At
9:00 am on the morning of Friday, March 14, 2008, before the
market opened, Bear Stearns issued a press release announcing
the deterioration of its liquidity position, and the secured
loan facility from JPMorgan. (¶ 33). Following this release, the
price of Bear Stearns stock fell from $57 per share to $30 per
share. (CA ¶ 11).

At some point after the market opened on March 14,
Roger Wang, allegedly unaware of Bear Stearns's press release,
contacted Zhou and placed a verbal order for 200,000 additional
shares of BSC. (¶¶ 31-34). The order, however, was only
"partially filled," and, as a result, Wang was to receive
100,000 shares of BSC at approximately $34 per share and "at no
time that day or ever did . . . Zhou warn, caution, or advise
Plaintiff or her husband against buying any more BSC stock."
(¶ 31). In placing this order on March 14, Roger Wang is also

alleged to have relied on Bland's "favorable recommendation" from three days earlier. (Id.).

Over the ensuing weekend, the loan facility did not calm the market's fears. On Sunday, March 16, 2008, Bear Stearns announced an agreement for JPMorgan to purchase the Company for the equivalent of $2 per share. (¶ 35). According to the Complaint, this announcement is when the Wangs "learned of the fraud." (¶ 35). The Wangs immediately stopped payment "on the scheduled wire transfer for their final stock trades," and refused to pay for their purchases of BSC stock. (¶ 35). The following day, March 17, a representative of Bear Stearns demanded payment from the Wangs, but was referred to their lawyer. (¶ 36).

Based on these allegations, the Plaintiff has brought claims against the Defendants for violation of Securities Exchange Act of 1934, Section 10(b), 15 U.S.C. § 78j (b) (¶¶ 49-58) breach of fiduciary duty; conspiracy to induce breach of fiduciary duty (¶¶ 64-69); fraud and deceit and conspiracy to defraud (¶¶ 70-79); violations of California Corporations Code Sections 25400 and 25401 (¶¶ 80-86); and violations of California Corporations Code Section 17200 (¶¶ 87-91).

**The Relevant Standards**

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims . . . .'" Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." Twombly, 550 U .S. at 570. Though the Court must accept the factual allegations of a complaint as true, it is "'not bound to accept as true a legal conclusion couched as a factual

9

allegation.'" Iqbal, 129 S.Ct. at 1950 (quoting Twombly, 550 U.S. at 555).

"To state a claim on which relief can be granted under § 10(b) and Rule 10b-5, a plaintiff must plead, inter alia, that . . . the defendant made a false representation as to a material fact, or omitted material information, and acted with scienter." S. Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 108 (2d Cir. 2009). A plaintiff must also satisfy the heightened pleading requirements set forth in Rule 9(b) of the Federal Rules of Civil Procedure and the PSLRA. See Boca Raton Firefighters & Police Pension Fund v. Bahash, 506 F. App. 32, 35-36 (2d Cir. 2012). Rule 9(b) requires that averments of fraud be "state[d] with particularity." Fed. R. Civ. P. 9(b); see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007). To satisfy this requirement, a plaintiff must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (internal quotation marks and citation omitted). General, conclusory, or speculative allegations, unsupported by specific facts, are legally insufficient. Id. at 176.

10

**The Allegations of Section 10(b) Violations Are Inadequate**

Wang's Section 10(b) allegations inadequately allege fraud with particularity, scienter, and reliance on any misstatements or omissions.

The Complaint does not plead fraud with particularity. With respect to Zhou, Plaintiff does not allege any affirmative misstatements. Instead, she alleges that Zhou failed to "caution or advise Plaintiff or her husband against buying any more BSC stock" on March 14, 2008 "or ever." (¶ 31). However, "[s]ilence [i.e., an omission] absent a duty to disclose, is not misleading under Rule 10b-5." In re Initial Public Offering Sec. Litig., 241 F. Supp. 2d 281, 380 (S.D.N.Y. 2003) (citing Basic v. Levinson, 485 U.S. 224, 380 (1988)). The Complaint does not adequately allege that Zhou had any duty to advise Wang or caution her about purchases of BSC shares in view of the disclaimer in the Customer Agreement that Wang signed.

11

It is not alleged that Zhou had a duty to speak in order to correct any prior statements. See, e.g., In re N. Telecom Ltd. Sec. Litig., 116 F. Supp. 2d 446, 460-61 (S.D.N.Y. 2000) ("A duty to correct or update, by definition, only arises with respect to 'prior' public statements."). Zhou did not have a duty to correct any misstatement allegedly made by anyone else at Bear Stearns, since there is no allegation that he was involved in any way in the making of those statements. See Levitt v. J.P.Morgan Sec., Inc., 710 F.3d 454, 467-68 (2d Cir. 2013) (defendant did not have a duty to disclose where complaint failed to allege the defendant's "direct involvement" in the scheme); In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig., 666 F. Supp. 547, 563 (S.D.N.Y. 1987) (absent evidence of direct participation in the preparation or issuance of documents, officers had no duty to disclose or correct any misstatements or omission of material fact in documents issued by corporation).

Plaintiff concedes that the Complaint does not allege any affirmative misstatement by Zhou but has alleged that Zhou should have warned her not to purchase any additional BSC stock on Friday, March 14, 2008 in view of the 9 a.m. announcement that Bear Stearns's liquidity had significantly deteriorated and

12

the firm was receiving extraordinary financing from JPMorgan. (¶¶ 31, 33). The Complaint also has alleged that the Bear Stearns press release on the morning of March 14 meant, "[i]n effect, Bear Stearns' credit facilities had essentially dried up, liquidity was in fact a huge problem, and the company was rapidly heading towards complete financial collapse." (¶ 33).


Even if the allegedly omitted, publicly available information about Bear Stearns's financial condition on March 14 was material, Zhou had no duty to disclose that information to the Wangs. The Customer Agreement signed by Plaintiff specifically disclaimed any such duty. Plaintiff has contended that the Customer Agreement only disclaimed fiduciary duties in the context of ERISA or retirement accounts, but the Customer Agreement is not so limited. It explicitly notes on the first page that "Bear Stearns is acting as a broker-dealer and custodian . . . Brokerage activities are regulated under different laws and rules than advisory activities and generally do not give rise to the fiduciary duties that an investment adviser has to its clients."

13

Wang has alleged that Zhou placed certain orders for BSC stock at her husband's request and that Zhou was incentivized to commit fraud in order to earn commissions on the trades. Wang does not allege that Zhou received any greater commissions from Wang's purchases of Bear Stearns stock than he did from Wang's other stock purchases at this time, and such generalized allegations do not give rise to a strong inference of scienter. See ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 200-01 (2d Cir. 2009).

In the absence of motive, the Plaintiff must provide "correspondingly greater" circumstantial allegations of scienter. Plaintiff has not alleged that Zhou was in possession of any material information about Bear Stearns's financial condition that was not publicly disclosed. Although Wang cites several "early warning signs such as that, on March 11, ING Group NV allegedly informed Bear Stearns that it was pulling $500 million in financing," (Opp. at 9; CA ¶ 269), there is no connection alleged between Zhou and those allegations nor an explanation for why a retail broker in the Bear Stearns's Los Angeles office would have had any knowledge of these events in real time. A corporation's knowledge cannot be attributed to

14

every employee. See, e.g., In re Dynex Cap., Inc. Sec. Litig.,
No. 05 Civ. 1897, 2006 WL 314524, at *8-9 (S.D.N.Y. Feb. 10,
2006), rev'd in part on other grounds, 531 F.3d 190 (2d Cir.
2008).

Wang does not dispute that she and her husband are
highly sophisticated investors who placed unsolicited orders
with Zhou for increasing amounts of BSC stock in March 2008 as
the rumors about Bear Stearns's financial condition intensified
and its stock price dropped. Wang also does not dispute that she
purchased BSC stock on March 14 following the public
announcement of Bear Stearns's serious liquidity problems.
Plaintiffs alleged reliance on Zhou is unreasonable as a matter
of law.

Further, any omission by Zhou would only be actionable
as fraud under §10(b) to the extent it was "material." See In re
Merrill Lynch Auction Rate Sec. Litig., 851 F. Supp. 2d 512,
535-36 (S.D.N.Y. 2012). To establish materiality a plaintiff
must demonstrate "a substantial likelihood that the disclosure
of the omitted fact would have been viewed by the reasonable
investor as having significantly altered the total mix of

15

information made available." Hutchison v. Deutsche Bank Sec.
Inc., 647 F.3d 479, 485 (2d Cir. 2011) (quotations omitted,
emphasis added). Wang fails to allege that a representation from
Zhou regarding the instability of Bear Stearns would have
affected the decision to purchase stock. Moreover, Wang has
acknowledged that the substance of Zhou's alleged omission on
March 14 had already been disclosed to the market at the time of
the purchases that day. (¶¶ 33-34). Any failure on Zhou's part
to reference the release relating to the loan facility with JP
Morgan in a later conversation with Roger Wang after the release
cannot be material as a matter of law. See In re Merrill Lynch,
851 F. Supp. 2d at 535-36 (defendants prior disclosure of the
substance of the alleged omission to the market rendered an
omission immaterial).


        To the extent that Wang's claims against Zhou are
based on a failure to "ever" caution her or her husband about
buying more BSC shares, not just on March 14, Wang has not
alleged with any particularity why omissions on other occasions
were materially misleading.

With respect to Bland, Plaintiff claims that Bland represented to Roger Wang during a conference on March 11 that Bear Stearns was a sound investment, that "its stock value should be at least $85.00 per share, . . . that [it] was a great time to invest in the stock," and that he would have purchased more shares at the time if he could. (¶ 30). However, Bland's alleged statements are opinion. See Rombach v. Chang, 355 F.3d 164, 174 (2d Cir. 2004). Prior cases have found statements virtually identical to Bland's to be inactionable as fraud:

- "[Bank] is in very good shape as it moves into its next stage of development." City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC, 423 F. Supp. 2d 348, 358 (S.D.N.Y. 2006);

- "[Company has a ] strong balance sheet." In re DRDGOLD Ltd. Sec. Litig., 472 F. Supp. 2d 562, 568-69 (S.D.N.Y. 2007) (statement "more properly characterized as optimistic statements of opinion as opposed to fact");

- "[Company is] in very good shape . . . problems reflect what every other reinsurer faced. We have put it behind us . . . ." Malin v. XL Capital Ltd., 499 F. Supp. 2d 117, 144 (D. Conn. 2007);

- Plaintiffs "were going to make good money on new issues." New v. L.F. Rothschild, Uterberg, Towbin, 651 F. Supp. 160, 163-64 (S.D.N.Y. 1986) (finding that statements were nothing more than "the common puff of a salesman"); and

- "[Bank] set the standard for best practices in risk management techniques." ECA, Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 205-06 (2d Cir. 2009) ("almost every investment bank makes these statements.").

17

Such corporate optimism has been held to be actionable only when the speaker provided "guarantees or . . . specific statements of fact, . . . or if [he] does not genuinely or reasonably believe them." In re Int'l Bus. Machines Corp. Sec. Litig., 163 F.3d 102, 107 (2d Cir. 1998). Wang makes no allegation that Bland ever made any guarantees or specific statements of fact, and she provides no adequate allegation that Bland did not subjectively believe the statements when made.

The Plaintiff has also failed to adequately allege scienter. Under the PSLRA, "Congress required plaintiffs to plead with particularity facts giving rise to a strong—i.e., a powerful or cogent—inference" of fraudulent intent. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 323, 127 S. Ct. 2499, 2510 (2007) (citations omitted); 15 U.S.C. § 78u-4(b)(2). A "strong inference" of scienter can be established by demonstrating facts either: "(1) showing that the defendants had both motive and opportunity to commit the [alleged] fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007); see also ECA, 553 F.3d at 198. "[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, [a] court must take into account plausible opposing inferences," such that "a

18

reasonable person would deem the inference of scienter cogent
and at least as compelling as any opposing inference one could
draw from the facts alleged." Tellabs, 551 U.S. at 336, 127 S.
Ct. at 2509-10.

The Complaint is devoid of factual allegations
suggesting that Zhou and Bland had motive to commit fraud. There
is an allegation that Zhou and Bland misstated or omitted
material facts "in an effort to maintain the artificially-
inflated price of BSC common stock." (¶ 51). The Second Circuit
has held in numerous cases that "similar allegations of a
generalized motive that could be imputed to any for-profit
endeavor are not concrete enough to infer scienter." In re
Merrill Lynch, 851 F. Supp. at 528; see ECA, 553 F.3d at 200-01
(no inference of scienter could be drawn from allegations that
defendants had a "desire to maximize corporation's profits," or
"were motivated because inflated stock price or improved
corporate performance would increase their compensation"); Acito
v. IMCERA Grp. Inc., 47 F. 3d 47, 54 (2d Cir. 1995).

In addition, Wang has failed to allege opportunity
that either Zhou or Bland were actually in possession of, or had
access to, material information about Bear Stearns's liquidity
or the value of its stock price that had not already been

19

publicly disclosed. Absent credible allegations that Zhou or
Bland had access to nonpublic facts about Bear Stearns's
unfolding financial condition, Wang's claim cannot satisfy the
PSLRA and the particularity requirements of Rule 9(b). See In re
Dynex Capital, Inc. Sec. Litig., No. 05 Civ. 1897, 2006 WL
314524, at *8-9 (S.D.N.Y. Feb. 10, 2006) (dismissing claims
where complaint failed to allege that corporate officers "saw or
had access to specific reports or statements that indicated
malfeasance, or that contradicted their public statements"),
rev'd in part, 531 F.3d 190 (2d Cir. 2008).

     With respect to Bland, there is no circumstantial
evidence from which to infer that Bland did not subjectively
believe that March 11, 2008 was in fact a good time to invest in
Bear Stearns. That Bland's prediction turned out to be wrong is
not relevant. See Podany v. Robertson Stephens, Inc., 318 F.
Supp. 2d 146, 155 (S.D.N.Y. 2004) ("[L]iability premised on
objective wrongness of an opinion alone would risk holding
federal securities law defendants liable for good-faith, if
negligent, errors.").

     Wang has not alleged any circumstantial evidence that
would compensate for her failure to allege motive and
opportunity. "When, as here, [plaintiff] ha[s] failed to plead

motive and opportunity . . . the strength of the circumstantial allegations must be correspondingly greater." In re JP Morgan Chase Sec. Litig., 363 F. Supp. 2d 595, 624 (S.D.N.Y. 2005) (citing Kalnit v. Eichler, 264 F.3d 131,142 (2d Cir. 2001)). Strong circumstantial evidence of scienter would require specific allegations tending to support that Zhou and Bland either: (1) possessed knowledge or had access to information that renders their alleged statements and omissions misleading; or (2) "ignored obvious signs of fraud." Novak v. Kasaks, 216 F.3d 300, 308-09 (2d Cir.), cert. denied, 531 U.S. 1012 (2000). There is no allegation that Zhou or Bland had access to information; nor do Wang's allegations give rise to a strong inference of recklessness or misbehavior.

A plaintiff alleging fraud must also plead reasonable reliance on the misstatements or omissions. SEC v. DiBella, 587 F.3d 553, 563 (2d Cir. 2009). The reasonableness of reliance turns on several factors; no single one is "dispositive." Brown v. E.F. Hutton Grp., Inc., 991 F.2d 1020, 1032 (2d Cir. 1993). Factors include: "(1) The sophistication and expertise of the plaintiff in financial and securities matters; (2) the existence of longstanding business or personal relationships; (3) access to the relevant information; (4) the existence of a fiduciary relationship; (5) concealment of the fraud; (6) the opportunity

21

to detect the fraud; (7) whether the plaintiff initiated the stock transaction or sought to expedite the transaction; and (8) the generality or specificity of the misrepresentations." In re Merrill Lynch, 851 F. Supp. 2d at 536-37.

Roger Wang is the chairman and CEO of the Golden Eagle International Group, which owns and operates high-end retail department stores throughout China and is traded on the Hong Kong exchange. In its 2013 list of billionaires, Forbes magazine estimated Roger Wang's net worth to be $3.8 billion. (Chepiga Decl. ¶ 2, Ex. 1). The Wangs are financially sophisticated, given their business experience and wealth and satisfy the definition of "Accredited Investor" under the federal securities laws. See 17 C.F.R. § 230.501. The Customer Agreement provided that Bear Stearns and its employees were acting only as a broker-dealer and custodian with respect to Wang's account, not an investment advisor or fiduciary.

The specific misstatements or omissions alleged by Wang do not adequately allege reasonable reliance. With respect to Zhou, Wang concedes that Bear Stearns issued a press release at 9:00 a.m. on the morning of March 14, prior to any purchases that day in her account. (¶¶ 33, 34). This release disclosed to the market the liquidity deterioration at Bear Stearns. As a

22

sophisticated investor, Wang cannot claim justifiable reliance on Zhou's failure to mention an already public press release. See, e.g., <u>Hunt v. Alliance N. Am. Gov't Income Trust, Inc.</u>, 159 F.3d 723, 730 (2d Cir. 1998) (finding that in light of adequate disclosures, "no reasonable investor could have been misled"); see also <u>Heliotrope Gen., Inc.</u>, 189 F.3d at 980-81 (no duty to disclose information "that the market was aware of" from news articles). This is true regardless of whether or not Wang was actually aware of the release. <u>Starr ex rel. Estate of Sampson v. Georgeson S'holder, Inc.</u>, 412 F.3d 103, 109-10 (2d Cir. 2005) (quoting <u>Brown</u>, 991 F.2d at 1032) ("[A]n investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered the truth.").

With respect to Bland, his statements of opinion are too generic to have induced a reasonable investor to rely on them. In <u>San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.</u>, 75 F.3d 801, 811 (2d Cir. 1996), the Second Circuit held that "general announcements by Philip Morris that it was 'optimistic' about its earnings and 'expected' Marlboro to perform well . . .[could not] have misled a reasonable investor . . . .". See also <u>Lasker v. N.Y. State Elec. & Gas Corp.</u>, 85 F.3d 55, 59 (2d Cir. 1996) (company's statement that it would have "continued prosperity" was not a guarantee against

23

stock price declines, and just "the type of 'puffery' that this
and other circuits have consistently held to be inactionable").

Any reliance on Bland's alleged statements is not
adequate because Wang only alleges reliance on Bland's
statements in connection with purchases on March 14. (¶ 31 ("On
Friday, March 14, . . . with reasonable reliance on Defendant
Bland's favorable recommendation . . . Plaintiff's husband
placed another verbal order . . . .")). As an initial matter,
these purchases took place three days after Bland is alleged to
have spoken with Roger Wang and hours after Bear Stearns issued
its press release on the morning of March 14 notifying the
market of the serious liquidity problems it experienced as a
result of a run on the bank and the financing being provided by
JPMorgan. (¶¶ 33-34). In light of these intervening
developments, which were widely reported in the press, it was
not reasonable for a sophisticated investor like Wang to have
relied on statements that Bland allegedly made back on Tuesday,
March 11 on Friday, March 14.[3]

---

[3] In her opposition, the Plaintiff has alleged for the first time that she also
relied on Bland's statements in connection with the March 11 purchases of BSC
stock. However, Plaintiff cannot amend the Complaint in an opposition brief.
See Fadem v. Ford Motor Co., 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is
long-standing precedent in this circuit that parties cannot amend their
pleadings through issues raised solely in their briefs.").

Moreover, Wang's allegation that Bland informed Roger Wang at a luncheon on March 11, 2008 that Bear Stearns was a sound investment, "its stock value should be at least $85.00 per share," it "was a great time to invest in the stock [of Bear Stearns]," and Bland would have purchased more shares at the time if he could constitutes a generic statement of corporate optimism actionable only if Bland provided "guarantees" or "specific statements of fact" or did not "genuinely or reasonably" believe the statements. See In re Int'l Bus. Machs. Corporate Sec. Litig., 163 F.3d 102, 107 (2d Cir. 1998). The "hallmark of an opinion is that it does not express 'matters of objective fact' which can be assessed against an 'objective standard' but instead conveys a belief or 'judgment' whose 'determination is inherently subjective.'" Billhofer v. Flamel Techs., S.A., No. 07 Civ. 9920 (RWS), 2012 WL 3079186, at *10 (S.D.N.Y. July 30, 2012) (quoting Fait v. Regions Fin. Corp., 655 F.3d 105, 110-13 (2d Cir. 2011)). Bland's alleged statements reflect his own subjective beliefs. While the Plaintiff has contended it would be inappropriate to find that these statements were opinions as opposed to factual statements, such findings are routinely made by courts on motions to dismiss. See, e.g., Plumbers Union Local No. 12 Pension Fund v. Swiss Reinsurance Co., 753 F. Supp. 2d 166, 182 (S.D.N.Y. 2010); In re

25

DRDGOLD Ltd. Sec. Litig., 472 F. Supp. 2d 562, 568-69 (S.D.N.Y. 2007).

Plaintiff's allegations do not give rise to a plausible inference that Bland did not subjectively believe his alleged March 11, 2008 statements to Roger Wang about Bear Stearns. The contention that Bland must have known that Bear Stearns was in a precarious financial position because two lenders allegedly pulled a small amount of financing from Bear Stearns prior to March 11 fails to connect Bland to the withdrawals of financing and does not allege any facts demonstrating that Bland knew or should have known of those events. The allegations of scienter fall well short of the Rule 9(b) and PSLRA heightened pleading standards.

**The Allegations of State Law Violations are Time-Barred and Inadequately Pled**

Count V of the Complaint asserts claims against Zhou and Bland for securities fraud under §§ 25400 and 25401 of California Corporations Code.

Under California law, Wang had "two years after the discovery . . . of the facts constituting the violation" to

26

assert her state law securities fraud claims. Wang alleges
substantive violations of both §§ 25400 and 25401, for which
§§ 25500 and 25501, respectively, provide causes of action. In
turn, Section 25506 provides a two-year limitations period from
the time of discovery for any causes of action arising under
§§ 25500 and 25501. See Cal. Corp. Code § 25506(b) ("[N]o action
shall be maintained to enforce any liability created under
Section 25500, 25501, or 25502 . . . unless brought before the
expiration of five years after the act or transaction
constituting the violation or the expiration of two years after
the discovery by the plaintiff of the facts constituting the
violation, whichever shall first expire."). Wang discovered her
claims on March 16, 2008, when the merger between Bear Stearns
and JPMorgan was announced and when Wang stopped payments on the
purchases of BSC because she had "learned of the fraud." (¶ 35).
Wang's Complaint was not filed until March 29, 2011, more than
three years later, and thus is time-barred.

        Wang does not contest that she filed her Complaint
against Zhou and Bland more than three years after her discovery
of the alleged fraud, but contends that either American Pipe or
California's equitable tolling principles apply to save her
state law claims. Wang's claims were not tolled during the
pendency of the Securities Action. "[A] federal court evaluating

27

the timeliness of state law claims must look to the law of the
relevant state to determine whether, and to what extent, the
statute of limitations should be tolled by the filing of a
putative class action in another jurisdiction." Casey v. Merck &
Co., 653 F.3d 95, 100 (2d Cir. 2011). "California has not
adopted such American Pipe tolling where the class action was
filed in a foreign jurisdiction." See Hatfield v. Halifax PLC,
564 F.3d 1177, 1187 (9th Cir. 2009) (quoting Clemens v. Daimler
Chrysler Corp., 534 F.3d 1017, 1025 (9th Cir. 2008)); Centaur
Classical Convertible Arbitrage Fund Ltd. v. Countrywide Fin.
Corp., 878 F. Supp. 2d 1009, 1017 (C.D. Cal. 2011) (rejecting
argument that prohibition against cross-jurisdictional tolling
should not apply because the class action and subsequent action
were both filed in the same federal court, because cross-
jurisdictional tolling "includes all situations where a class
action is filed outside the . . . state court system"). American
Pipe is not the law in California.

Wang has acknowledged that in Clemens v. Daimler
Chrysler Corp., 534 F.3d 1017 (9th Cir. 2008), the Ninth Circuit
refused to extend American Pipe to allow an earlier class action
brought in a foreign jurisdiction to toll the statute of
limitations for a subsequently filed California action, but she
contends that tolling principles should still apply here. Wang

28

has contended that Zhou and Bland were on notice of her claims
by the filing of the Securities Action in this District, and
Defendants have not been prejudiced "in gathering evidence of
identifying witnesses." (Opp. at 25). Zhou and Bland are not
mentioned in the Securities Action complaint, the Securities
Action complaint is not based on a broker-relationship with any
plaintiff, and Zhou and Bland's alleged misrepresentations and
omissions are separate from those at issue in the Securities
Action. Wang has acknowledged these differences. (See Dkt. No.
68 at 5 (arguing her case presents "unique circumstances" due to
her "direct client relationship with Bear Stearns" and the
"false material information [she received] from Bear Stearns
managers and employees (including defendants Zhou and Bland)")).
The Securities Action did not provide Zhou and Bland with notice
of Wang's claims against them and allowing Wang's claims to
proceed would prejudice Defendants.

     Counts III and IV of the Complaint allege,
respectively, state law breach of fiduciary duty and common law
fraud claims against Zhou and Bland.

     Under California law, claims for breach of fiduciary
duty that sound in fraud and common law fraud must be brought
within three years from the date the Plaintiff "discover[ed] the

29

fraud or facts that would lead a reasonably prudent person to
suspect fraud." See Deveny v. Entropin, Inc., 42 Cal. Rptr. 3d
807, 816 (Cal. Ct. App. 2006); Fuller v. First Franklin Fin.
Corp., C070452, 2013 WL 1820047, at *4 (Cal. Ct. App. May 1,
2013).

Since Wang's breach of fiduciary duty and common law
fraud claims are based on the same allegations as her Section
10(b) claims, her allegations must comport with the
particularity requirements of Rule 9(b). See Sollberger v.
Wachovia Sec., LLC, No. SACV 09-0766 AG (ANx), 2010 WL 2674456,
at *7 (C.D. Cal. June 30, 2010); Soley v. Wasserman, No. 08 Civ.
9262, 2010 WL 931888, at *7 (S.D.N.Y. Mar. 12, 2010) ("Rule 9(b)
also applies to breach of fiduciary duty claims where the breach
is premised on the defendant's fraudulent conduct, such as an
attempt to induce action or inaction on the part of . . .
investors by means of falsehoods or material omissions."
(internal quotations omitted)); Jackson v. Fischer, No. C 11-
2753 PJH, 2013 WL 1089860, at *16 (N.D. Cal. Mar. 15, 2013)
("[I]n federal court, allegations of [common law] fraud in civil
cases are subject to the particularity requirements of Rule
9(b)."). As set forth above, Wang has failed to plead fraud with
the particularity required by Rule 9(b), and, accordingly, her
claims for breach of fiduciary duty and common law fraud must be

30

dismissed. See Jackson, 2013 WL 1089860, at *16; In re Merrill
Lynch, 851 F. Supp. 2d at 541.


Wang's Complaint also fails to allege that either Zhou
or Bland had a fiduciary duty to warn her against additional
purchases of BSC stock. Under California law, the scope of a
duty that a broker owes his customers is entirely dependent on
the nature of the parties' relationship, and does not include
the duty to disclose, advise or warn about an investment unless
the broker was acting in an advisory capacity. Brown v. Cal.
Pension Admin. & Consultants, Inc., 45 Cal. App. 4th 333, 348
(Cal. Ct. App. 1996).


Courts have declined to find a duty to warn where, as
here, a contract disclaimed such a relationship. See Yerkovich
v. MCA, Inc., 211 F.3d 1276 (9th Cir. 2000) (citing the
existence of a contract expressly disclaiming the existence of a
fiduciary relationship as evidence that no such relationship
existed), cert. denied, 531 U.S. 871 (2000); Petersen v. Sec.
Settlement, 226 Cal. App. 3d, 1445, 1454-55 (Cal. Ct. App. 1991)
(same). The Customer Agreement signed by Wang made plain that
Bear Stearns would not be acting as an investment advisor or

31

fiduciary. (See Chepiga Decl. ¶ 3; Ex. 2 ¶ 1(b) (disclaiming

Bear Stearns's role as investment advisor and providing that

Plaintiff would consult with her own "investment, financial and

accounting advisors to the extent [she] deem[ed] necessary in

determining the investment and trading strategy appropriate for

[her]")).


        California courts consider "the relative

sophistication and experience of the customer; the customer's

ability to evaluate the broker's recommendations and exercise an

independent judgment thereon; the nature of the account, whether

discretionary or nondiscretionary; and the actual financial

situation and needs of the customer." Duffy v. Cavalier, 215

Cal. App. 3d 1517, 1536, n.10 (Cal. Ct. App. 1989). Where a

broker serves only to execute investment decisions made by a

client, there is no "duty to notify the customer of the risky

nature of an investment, or . . . of the poor performance of

similar investments held by different customers." Brown, 45 Cal.

App. 4th at 348; see also Petersen, 226 Cal. Ct. App. 3d at

1454-55 (broker that did not provide investment advice to its

customers had no duty to warn her about the risky nature of

investments). Wang and her husband were wealthy and

sophisticated investors with the background and financial means

32

necessary to exercise independent judgment. Indeed, they
appeared to have a strategy of investing in the stock of
financial companies in the height of the financial panic, as
Bear Stearns was not the only financial stock they were
acquiring at the time. (¶¶ 25-29).


       With respect to Zhou specifically, Wang has alleged
that, in the mid-1990s, Zhou "began advising [her] and her
family about investments," (¶ 23); that he provided advice about
"one or more purchases at issue in this case," (¶ 21); but did
not "warn, caution, or advise . . . against buying more BSC
stock," (¶ 31). Plaintiff does not allege that her BSC purchases
were solicited by Zhou, does not describe any advice provided by
Zhou, and does not state that she was persuaded by Zhou's
advice. To the contrary, at most her allegations demonstrate
that, after some time "using a different broker," (¶ 24), the
Wangs contacted Zhou to set-up a brokerage account at Bear
Stearns, and that, through him, Roger Wang placed orders for
purchases of stock in several financial institutions. These
allegations are insufficient to show that Zhou had a duty to
advise Wang about the riskiness of her investments.

With respect to Bland, "Before a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." Apollo Cap. Fund v. Roth Cap. Partners, 158 Cal. App. 4th 226, 246 (Cal. Ct. App. 2007). The Complaint lacks allegations that Bland intended to act on the Wangs' behalf or exercised control over Plaintiff's account. While the Complaint alleges that Bland knew that Roger Wang was a customer of Bear Stearns, that is insufficient to establish a fiduciary relationship between the Plaintiff and Bland simply because Bland was an employee of Bear Stearns. See Daniels v. Bd. of Ret. of L.A. Cnty Emps. Ret. Ass'n, No. B228240, 2011 WL 6004477, at *6 (Cal. Ct. App. Dec. 21, 2011) ("As employees, the individual defendants were not in a fiduciary relationship with plaintiff and they owed him no fiduciary duty as a matter of law.") (citations omitted); Masters v. San Bernardino Cnty Emps. Ret. Ass'n, 37 Cal. Rptr. 2d 860, 870 (Cal. Ct. App. 1995) (employee of retirement association owed no fiduciary duty to claimant).

The Plaintiff's claims for conspiracy to defraud and conspiracy to induce breach of a fiduciary duty are also time-

34

barred as "allegation[s] of a conspiracy of a civil action [do] not affect the limitations period for the substantive theory of liability involved." Fuller, 2013 WL 1820047, at *4. Also, since Wang's substantive claims against Zhou and Bland relating to common law fraud and breach of fiduciary duty must be dismissed for failure to adequately allege fraud, or pled with particularity, so too should her conspiracy claims be dismissed for the same reasons. See Ajetunmobi v. Clarion Mortg. Capital, Inc., No. SACV 12-0568, 2012 WL 2945051, at *5 (C.D. Cal. July 17, 2012) (dismissing claims for fraud and conspiracy to defraud where allegations failed to comport with particularity requirements of Rule 9(b)).

In addition, Plaintiff has not adequately pled that Zhou and Bland were participants in a conspiracy, or with whom they conspired. See Arei II Cases, No. A130447, 2013 WL 2356108, at *11 (Cal. Ct. App. May 29, 2013) (plaintiff must allege facts sufficient for the court to infer that each alleged conspirator "acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, . . . . It is not enough that the [alleged conspirators] knew of an intended wrongful act, they must agree—expressly or tacitly—to achieve it.").

35

Bare, conclusory allegations of participation in a conspiracy
are insufficient. Id.


        Even if those claims were not time-barred and were
pled with the requisite particularity, which is not the case,
Wang has failed to allege any facts supporting a conspiracy.
Indeed, the only paragraph of the Complaint to which she points
contains entirely conclusory allegation that Defendants "engaged
in an unlawful conspiracy to support BSC's falling stock price
through the use of deceitful means." (¶ 45). Such allegations
are insufficient to plead a conspiracy as a matter of law. See
Arei II Cases, 157 Cal. Rptr. 3d 368, 383 (Cal. Ct. App. 2013);
Geurin v. 21st Century Ins. Co., No. G029885, 2003 WL 329567, at
*2 (Cal. Ct. App. Feb. 13, 2003).


        Count VI asserts claims under California Business &
Professions Code § 17200 for unlawful business practices. To
state a claim under § 17200, a plaintiff must plead, inter alia,
a predicate violation of an underlying law. Ingels v. Westwood
One Broad., Servs., Inc., 28 Cal. Rptr. 3d 933, 938 (Cal. Ct.
App. 2005) (a defendant "cannot be liable under § 17200 for
committing unlawful business practices without having violated

                              36

another law"). Because Wang has not sufficiently plead a viable primary violation by Zhou or Bland, her § 17200 claims must be dismissed. <u>Briosos v. Wells Fargo Bank</u>, 737 F. Supp. 2d 1018, 1033 (N.D. Cal. 2010).

**Conclusion**

Based upon the conclusion set forth above, the motion of the Defendants is granted, and the Complaint is dismissed with leave granted to replead within 20 days.

It is so ordered.

New York, NY
April / 5, 2014

_____
ROBERT W. SWEET